The People of the State of Illinois, Plaintiff-Appellee, v. Joseph C. Gilliam, et al., Defendants.
People of the State of Illinois, Plaintiff-Appellee, v. Robert W. Perschall, Defendant-Appellant.

Gen. No. 10,781.

Fourth District.

June 1, 1967.

Jack A. Brunnenmeyer, of Peoria, for appellant.

Hugh A. Henry, Jr., State's Attorney of McLean County, of Bloomington, for appellee.

SMITH, J.

The Circuit Court of McLean County found the defendant guilty of contempt of court for conduct arising out of his testimony as a witness in a criminal case and summarily sentenced him to 120 days in the county jail. The required judgment order detailing the salient facts was entered and the defendant now appeals. A brief recitation of the factual background is essential for a clear view of the picture portrayed by this record.

Defendant and two others were indicted for the crime of arson and burglary occurring on May 28, 1964. On May 29, the defendant confessed and involved not only himself but the other defendants in the case and detailed some of the occurrence events in the written confession. A motion to suppress the confession was filed and on November 15 and 16, 1965, after hearing evidence including the testimony of the defendant Perschall, the motion was denied. Trial of the three defendants before a jury began on April 18, 1966, and continued on the 19th, 20th, 21st and 22nd. On the 22nd, the State nolle prossed the case as to Perschall, an order granting him immunity from prosecution was entered and he was called to testify for the State and declared to be a hostile witness. In response to some 29 or 30 questions, he answered, "I don't know" or "I don't remember."

On April 25, at the request of defense counsel, the defendant was again called and stated that he was tired when he testified on April 22, from working at night and being in court all day, and wound up by saying, "I still do not recall anything that happened prior to the time that I was arrested and I do not recall clearly the events of my arrest, but I do vaguely recall my being arrested. I do recall being taken to the Normal Police Station. I also recall that I was taken upstairs. After that I do not recall very much about what happened. . . ." At this point, the court intervened and indicated that summary punishment for contempt of court is an awesome responsibility for a court and should only be used when the most unusual circumstances exist. He stated that he had spent the weekend going over the testimony given on Friday, the 22nd, and on November 15; that he had read the full and complete confession that the defendant made in the case; stated that the defendant in the confession had a full and detailed memory of his activities on May 29 and, on November 15,

had a full and complete memory of his activities during the day. The court then said, "Your answers are really tantamount to refusing to testify before this Court, and in my considered judgment much of your testimony is also false. This is unusual in that it doesn't consist of flat contradictions, but merely of saying, 'I don't remember,' which I recognize is subjective. I find that the testimony which you gave yesterday, your statement today that you recall absolutely nothing of your activities prior to your arrest on May 29th false when it was made; that you knew it was false when it was made and that you testified in this fashion with deliberate intentions offending the dignity of this Court, interfering with this procedure and of the orderly administration of justice, . . ." The court then imposed sentence.

 The defendant devotes much time in his briefs to complaining about the procedural route followed by the prosecution in the arson case. That issue is not before us on the present appeal. It is the conduct of the defendant which we scrutinize and whether or not that conduct furnishes an evidentiary basis for the judgment order finding him guilty of contempt. The court's finding is two-pronged: The first is that the defendant's conduct amounts to a refusal to testify and secondly, that the witness' statements were as a matter of fact false and were known to him at the time they were given to be false. No case involving lapse of memory as a basis for contempt of court has been cited to us nor has our own research disclosed any such case. Ill Rev Stats 1965, c 38, § 106–3, reads thusly:

> "Any witness who having been granted immunity refuses to testify or produce other evidence shall be in contempt of court subject to proceedings in accordance to law."

Was the conduct of the defendant in this case in effect and in fact a "refusal" to testify? In State ex rel. Luban

v. Coleman, 138 Fla 555, 189 So 713, 714, it was held that testimony which is obviously false or evasive is equivalent to a refusal to testify and is punishable as contempt. Paragraph 106-1 of our Witness Immunity Statute provides that any material witness may "be released from all liability to be prosecuted or punished on account of any testimony or other evidence he may be required to produce." The words "refuses to testify" may be properly read as meaning "refuses to give oral testimony" on an issue then being investigated. Oral testimony material to a point in issue is evidence. "Evidence signifies that which demonstrates, makes clear, or ascertains the truth of the very fact or point in issue, either on the one side or on the other." 3 Blackstone, Commentaries, 367; Am Jur2d, Evidence, ¶ 1. The trial court was correct in concluding that the defendant refused to give evidence, refused to give oral testimony, and refused to testify to matters in issue on the arson and burglary case which were then within his knowledge.

■ ■ The second prong of the court's finding is unique in that we are not confronted with a situation where a defendant has on different occasions given sworn testimony diametrically opposite or contrary. Neither do we deal with a situation where the defendant had admitted in open court that he testified falsely on a prior occasion. The very narrow issue presented here is whether or not, when this defendant said "I don't remember" or "I don't know," such statements were false and were known to the defendant to be false. It is thus immaterial whether facts stated in the confession or the facts testified to by the defendant on November 15 were in fact true or false. The defendant's statements on April 22 and again on April 25 must be weighed in an atmosphere where the defendant had sat in open court for five days listening to testimony about the events of the fire and the burglary, where there was a confession in which he had detailed certain facts of the fire

and the burglary, and where he had likewise testified on November 15 to facts surrounding such confession. The record shows this young man to be 21 years of age, alert, normally intelligent, a high school graduate, and that he was an articulate individual and had testified on November 15, in a calm and relaxed manner. At his own request, he was given the opportunity to rehabilitate himself on Monday, April 25. At no time did he repudiate the contents of the confession. At no time did he repudiate the testimony given on November 15. At no time did he suggest any believable physical or psychological reason for a total lapse of memory. It strains credulity to believe that he remembered nothing except the events occurring during the progress of the arson and burglary trial. It is pure sophistry to believe that after listening to the testimony offered and discussed during that trial that his memory was not refreshed. We must conclude as did the trial court that this posture of total failure to recall is false and that the statements made by him to the effect that he did not remember or did not know were deliberately, intentionally and knowingly made in the presence of the jury and in the courtroom and was done with the intention of offending the dignity of the court, of interfering with an orderly trial and with obstructing the orderly and ordinary administration of justice. We are not justified in disturbing the findings of the trial court as to questions of fact unless it may be said that such findings are contrary to the manifest weight of the evidence. They aren't.

██ The same trial judge heard the testimony on the motion to suppress the confession. The same trial judge heard the evidence in the principal case of arson and burglary. The conduct of the defendant which was the basis for his finding of contempt was thus within his own knowledge and in open court. No other additional or extraneous evidence was necessary or required to sup-

port his findings. We thus deal with a direct contempt which, under our law, may be summarily handled. Direct contempt is any act or conduct committed in the presence of a judge during the course of a judicial hearing and which are thus within his personal knowledge and which are calculated to embarrass, hinder, or obstruct the court in the proper administration of justice or which is calculated to undermine its authority or dignity and which tends to bring the administration of justice into disrepute and invite public disrespect. A direct contempt may be dealt with summarily by such judge without the formality of pleading, notice or answer. People v. Gholson, 412 Ill 294, 106 NE2d 333; People v. Berof, 367 Ill 454, 11 NE2d 936; People v. Harrison, 403 Ill 320, 86 NE2d 208; In re Kelly's Estate, 365 Ill 174, 6 NE2d 113.

█ One cannot read this record as we have without concluding that this defendant willfully refused to testify to facts within his knowledge, that his posture of lapse of memory is a transparent smoke screen and, that his statements that he didn't know or didn't remember are manifestly false. It must be remembered that this defendant was a codefendant in the arson and burglary case until the day on which he was called to testify. We would blindfold common sense if we did not conclude that the matter set forth in his confession and the matters testified to him in open court on November 15 were known to and discussed among these defendants prior to trial. We think the conduct and the statements of this defendant were not only calculated to but did undermine the dignity of this trial court, hinder the proper administration of justice, and could only adversely reflect on the judicial process in the minds of those who heard and observed it in the courtroom. We recognize, as did the trial court, that direct contempt must be exercised with judicial restraint and where the circumstances are unusual. It was and they are.

257

Accordingly, the judgment of the trial court should be and it is hereby affirmed.

Affirmed.

CRAVEN, P. J. and TRAPP, J., concur.