(No. 43771.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* JACK A. BUTLER *et al.*, Appellants.

*Opinion filed Sept. 30, 1971.—Rehearing denied Nov. 29, 1971.*

RYAN, J., dissenting.

ELMER GERTZ, of Chicago, and ARTHUR M. LERNER, of Champaign, (WAYNE B. GIAMPIETRO, of counsel,) for appellants.

WILLIAM J. SCOTT, Attorney General, of Springfield, for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

On April 16, 1970, a jury in the circuit court of Vermilion County found the defendants, Jack A. Butler and Jack A. Butler Enterprises, guilty of the offense of obscenity for exhibiting the motion picture "Vixen." Jack A. Butler Enterprises was fined $1000; Jack A. Butler was fined $500 and sentenced to one year's probation. Of the numerous issues, some constitutional and some procedural, that have been raised by the defendants on this direct appeal, we find it necessary to consider only one.

The jury viewed the film, and numerous witnesses expressed their opinions as to whether or not it is obscene. There was testimony that the film had been exhibited in cities and towns throughout the State including Chicago, Peoria, Rockford, Kankakee, Aurora, Waukegan, Elgin, Danville, Champaign, Decatur, Bloomington, Lincoln, Galesburg, Havana, Rochelle, North Chicago, LaSalle, Streator, Villa Grove, Macomb, Earlville, Pekin, Tuscola, Canton, Pontiac, Chicago Heights, Freeport, DeKalb, Savanna, Alton, and Chicago suburbs. The business records of defense witnesses showed that since February of 1969, the film had been exhibited in 42 towns and cities throughout the State in 62 different theatres for a total of 336 weeks. The showings at individual theatres varied from one to 43 weeks. Both the distributor of the film and the defendants' manager testified that there had been no problems in connection with the exhibition of the film.

The jury was instructed that "in determining whether or not a movie is obscene, the jury must consider whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to the prurient interest." No specific instruction was given to the jury as to the scope or breadth of the "community" by whose contemporary standards the alleged obscenity of the film was to be judged. During the course

of the trial, however, both the State's Attorney and the trial judge indicated, in the presence of the jury, that the film could be found obscene if it offended the contemporary community standards of Vermilion County. That position was reiterated by the trial judge when he denied the defendants' post-trial motion for judgment notwithstanding the verdict, on the ground that the evidence could support the jury's determination that the film "did not comply with the contemporary community standards of Vermilion County."

In *Roth* v. *United States* (1957), 354 U.S. 476, 1 L. Ed. 2d 1498, 77 S. Ct. 1304, the United States Supreme Court held that the test for determining obscenity is "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." (354 U.S. at 489, 1 L. Ed. 2d at 1509.) The opinion in this case, however, did not identify the exact community whose standards are to be applied in determining whether the dominant theme of the material appeals to prurient interest. In the subsequent case of *Jacobellis* v. *Ohio* (1964), 378 U.S. 184, 12 L. Ed. 2d 793, 84 S. Ct. 1676, some of the justices stated that a national standard was constitutionally required; others favored local standards; and still others found it unnecessary to confront the issue, because, in their opinion, the first amendment prohibits all laws regulating what may be depicted in motion pictures. A similar difference of opinion exists among the legal commentators. *Compare, e.g.,* Lockhart & McClure, Censorship of Obscenity: The Developing Constitutional Standards (1960), 45 Minn. L. Rev. 1, 108-114; *with* Note, Constitutional Law—Deprivation of Personal Rights—Possessing and Exhibiting Film—Evolution of an Obscenity Standard (1965), 16 W. Res. L. Rev. 780, 782-84; *with* O'Meara & Shaffer, Obscenity in the Supreme Court: A Note on *Jacobellis* v. *Ohio* (1964), 40 N.D. Law. 1.

It is unnecessary for us to decide, however, whether

a national standard is constitutionally required. Subsection (c)(4) of our statute regulating obscenity relates to the admissibility of evidence and speaks of the "degree, if any, of public acceptance of the material *in this State* \* \* \*." (Ill. Rev. Stat. 1969, ch. 38, par 11—20(c)(4) (emphasis supplied); *cf.* Model Penal Code (1962), Proposed Official Draft, p. 239.) In our opinion, the statute contemplates the application of a statewide standard, and not a standard that varies from county to county. (*Cf. People* v. *Sikora* (1965), 32 Ill.2d 260, 264-5.) Accordingly, the cause must be remanded for a new trial.

The judgment of the circuit court of Vermilion County is reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*

Mr. JUSTICE RYAN, dissenting:

The majority opinion seems to indicate that the jury was in some manner erroneously instructed that the film could be judged obscene if it offended contemporary community standards of Vermilion County. The opinion assumes that the jury judged the film on a county by county standard and not on a state wide standard.

The jury certainly was not limited in its consideration of evidence to that which pertained to matters acceptable only in Vermilion County. The court granted the defendants broad latitude in the introduction of evidence concerning the degree of acceptance that the film in question had received, not only state wide in Illinois but throughout the country. Reviews of motion picture critics from New York, Los Angeles, Washington and Chicago, all concerning this film, were introduced as evidence of its general acceptance. Witnesses from the academic world testified concerning the general acceptance of films of this type and the number of such films being produced. They testified about the gradual lessening of restrictions on the subject of sex in films from 1895 to date and they expressed their opinions of this film

as compared with others being produced and others that had been shown in Vermilion County.

As to the instructions to the jury on the law, the instruction concerning "contemporary community standards" referred to in the majority opinion is in the language of the opinion of the court in *Roth* v. *United States,* 354 U.S. 476, 1 L. Ed. 2d 1498 at 1509, 77 S. Ct. 1304. This instruction was not a People's instruction. It was defendant's instruction number 5. The defendants did not tender an instruction which defined the scope and breadth of the community to which their instruction referred.

The majority opinion refers to section 11—20(c)(4) of the Criminal Code of 1961 (Ill. Rev. Stat. 1969, ch. 38, par. 11—20(c)(4) as indicating that the statute contemplates the application of a state wide standard. If that is a proper interpretation of that section of the statute then the jury was properly instructed that they were to apply a state wide standard because defendants' instruction number 8 which was given is substantially in the language of this section of the statute. It instructed the jury that it was proper for them to consider: "The degree, if any, of public acceptance of the material *in this state.*" (Emphasis added.)

Therefore, it would appear that the jury was properly instructed as to "contemporary community standards" as that term was construed in the majority opinion. No instruction was given which refers to local community standards or Vermilion County standards. The opinion states however that the State's Attorney and the judge indicated in the presence of the jury that Vermilion County standards were to be applied. I cannot accept this conclusion.

The comment of the judge referred to was in the form of a question which the court put to a witness for defendants. This witness had testified as to reviews of critics concerning this film and how these reviews indicated a public acceptance of the film. The court inquired as to whether the opinion of one critic would of necessity reflect the opinion of

the public and the witness indicated that wouldn't necessarily follow. The court then inquired whether the fact that 10,000 people who saw the film in Vermilion County would represent the opinion of a majority of the more than 100,000 residents of the county. This does not convey to me the conclusion that the judge thereby indicated to the jury that the film had to be judged by the standards of Vermilion County. A very clear reason for the propounding of this question is found in the defendants' motion for a directed verdict filed at the close of the People's case wherein defendants contended: "The evidence of the People affirmatively shows the public acceptance of this movie in Vermilion County, Illinois by reason of the testimony of the People that between nine and ten thousand people saw the film in Danville, Illinois." The same allegation was made again in the defendants' motion for a directed verdict at the close of all the evidence. Since the defendants had raised the issue of the film's acceptance in Vermilion County it would appear proper for such an inquiry to be made of defendants' witness who was testifying concerning his opinion as to the general acceptance of the picture.

After the judge had propounded the questions to this witness he stated: "If counsel has any objection to the court asking any question, speak up." There followed a conference at the bench and no objection was made to any question or statement of the judge.

The comments of the State's Attorney are found in his interrogation of defendants' witnesses which questions were also posed after the defendants had raised the question of acceptance in Vermilion County in the motion for directed verdict at the close of the People's case. Here also, no objections were made to any of the questions of the State's Attorney now deemed objectionable.

The Code of Criminal Procedure (Ill. Rev. Stat. 1969, ch. 38, par. 116—1) provides for the filing of a written motion for a new trial in criminal cases and requires that

the written motion shall specify the grounds therefor. This court has frequently held that where "grounds for a motion for a new trial are stated in writing, the party is limited to the errors alleged in the written motion and all other errors are deemed to have been waived." (*People* v. *Hunter,* 23 Ill.2d 177, 178; *People* v. *Flynn,* 8 Ill.2d 116.) Following the verdict of the jury defendants filed a motion entitled "motion for judgment notwithstanding the verdict, and in the alternative for a new trial," specifying many grounds in support thereof. However, the defendants did not refer therein to any comment, question or conduct of the judge or State's Attorney. Under well established rules of law, any objection to the judge's or State's Attorney's reference to Vermilion County has been waived.

In conclusion, the jury was properly instructed on the law as the majority opinion perceives the law to be. The questions of the judge and the State's Attorney concerning acceptance in Vermilion County were justified because of the fact that defendants had raised the issue. Finally, if there was any error in the propounding of these questions by the judge and the State's Attorney the defendants have waived the same by the failure to specify these errors in the motion for a new trial. For these reasons I would affirm the judgment of the circuit court of Vermilion County.