THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD WATSON, Defendant-Appellant.

(No. 11996;

Fourth District—April 3, 1975.

1082

John F. McNichols and Theodore A. Gottfried, both of State Appellate Defender's Office, of Springfield, for appellant.

Robert J. Bier, State's Attorney, of Quincy (Michael Prall, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

Defendant, Richard Watson, appeals from his conviction following a jury trial of the offense of obscenity and from a sentence imposed of $600. Defendant raises three issues before this court: (1) Whether defendant was entrapped into selling the allegedly obscene materials; (2) Whether the Illinois obscenity statute is unconstitutional in failing to include "utterly without any redeeming social value" in its definition of obscenity, and (3) Whether the Illinois obscenity statute is unconstitutional in failing to include a national standard for interpreting allegedly obscene material.

On October 20, 1971, defendant was charged by information with the crime of obscenity in violation of section 11—20(a)(1) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 11—20). Defendant was charged with selling a book entitled "Swedish Sexual Pleasure" containing allegedly obscene pictures to a Charles Phillips. A jury trial was held on April 18, 1972. At the trial Phillips, a Quincy, Illinois, car salesman, testified that on September 13, 1971, he and Smith went to defendant's bookstore and purchased the book in question and a film. He stated that he asked defendant if he had the hard core pornography they wanted, that

defendant replied affirmatively, and that defendant went to the back of the room and took the book and film from a paper sack. He stated that defendant also told them that he could get a lot more similar material from St. Louis. He testified that they had been in the bookstore a few days before and had inquired about obtaining a color film. He further stated that he was instructed to purchase the material by the State's attorney, and that he was a member of the Concerned Citizens Committee of Quincy. Witness Smith essentially verified Phillips' testimony and stated that the Committee had canvassed numerous stores in the area requesting that various books and men's magazines be removed from the shelves. He further stated that he considered various works by Shakespeare, such as "Romeo and Juliet" and "Hamlet," to be "somewhat" pornographic. The book was admitted into evidence, and the State then rested. Defendant testified that he sold the book in question to Phillips, that the book had been in his store for several months, and that he knew the contests of said book. The jury then returned a verdict of guilty. On June 23, 1972, defendant was fined $600 plus costs.

■■  In *Miller v. California,* 413 U.S. 15, 37 L.Ed.2d 419, 93 S.Ct. 2607, the United States Supreme Court established a definitive test for State regulation of pornography. To be constitutionally valid the sexual conduct proscribed by State statute must be specifically defined by State law, as written or as authoritatively construed, and the offense must be limited to works which, as a whole, appeal to a prurient interest in sex, portray sexual conduct in a patently offensive way, and which, as a whole, do not have serious literary, artistic, political, or scientific value. Accordingly, the Court in *Miller* stated:

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest [citations]; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." (413 U.S. 15, 25, 37 L.Ed.2d 419, 431, 93 S.Ct. 2607, 2615.)

In *People v. Ridens,* 59 Ill.2d 362, 321 N.E.2d 264, the Illinois Supreme Court, on remand from the United States Supreme Court (*Ridens v. Illinois,* 413 U.S. 912, 37 L.Ed. 1030, 93 S.Ct. 3046), upheld the constitutionality of the Illinois obscenity statute (Ill. Rev. Stat. 1969, ch. 38, par. 11—20) in light of *Miller* and stated that the Illinois statute substantially incorporates or is, at least, consistent with the requirements established in *Miller* for State regulation of pornography.

■■  In considering defendant's conviction under our obscenity statute,

we note as plain error the complete failure of the trial court to instruct the jury regarding the geographical standard that they should apply in their deliberations. In *People v. Butler*, 49 Ill.2d 435, 437, 275 N.E.2d 400, the supreme court stated that our obscenity statute contemplates the application of a statewide standard in determining "whether to the average person, applying contemporary community standards, the dominent theme of the material taken as a whole appeals to prurient interest." The trial court in *Miller* instructed the jury to apply a statewide standard, and such a standard was upheld by the United States Supreme Court. Subsequently, however, that same Court in *Jenkins v. Georgia*, 418 U.S. 153, 157, 41 L.Ed.2d 642, 648, 94 S.Ct. 2750, 2753, held:

> "*Miller* approved the use of such instructions [standards of a hypothetical statewide community]; it did not mandate their use. What *Miller* makes clear is that state juries need not be instructed to apply 'national standards.' We also agree with the Supreme Court of Georgia's implicit approval of the trial court's instructions directing jurors to apply 'community standards' without specifying what 'community.' *Miller* held that it was constitutionally permissible to permit juries to rely on the understanding of the community from which they came as to contemporary community standards, and the States have considerable latitude in framing statutes under this element of the *Miller* decision. A State may choose to define an obscenity offense in terms of 'contemporary community standards' as defined in *Miller* without further specification, as was done here, or it may choose to define the standards in more precise geographic terms, as was done by California in *Miller*."

The *Jenkins* decision then opens the door for states to apply a less precise geographical standard than the State should they so desire. Nevertheless, the jury still must be instructed as to which geographical standard to apply. In Illinois the standard is statewide (see *Butler, supra*), and the jury must be so instructed.

In the instant case People's Instruction No. 8 stated:

> "A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex, or excretion, and if it goes substantially beyond customary limits of candor in its description or representation of such matters, and it is utterly without redeeming social value, or it has been commercially exploited for the exclusive sake of prurient appeal. Obscenity is judged with reference to ordinary adults."

Neither this instruction nor any of the other instructions mention the statewide standard required under our statute by the *Butler* decision.

Furthermore, the trial judge stated nothing to the jury in this regard, and no evidence was presented by the State or the defense in regard to any type of contemporary statewide community standard. Our supreme court has held that no proof other than the offending publication is required for the State to meet their burden, and that proof of contemporary community standards is unnecessary in an obscenity prosecution in this State. (*City of Chicago v. Kimmel*, 31 Ill.2d 202, 201 N.E.2d 386; *People v. Ridens*, 51 Ill.2d 410, 282 N.E.2d 691.) Nevertheless, these cases still require the jury to be instructed as to the applicable standards for judging obscenity. The jury in the instant case then was given unbridled discretion to impose any type of standard they desired as to the book in question from their own highly subjective feelings to a precise nationwide geographical standard. The possibilities inherent in such a procedure makes a mockery of defendant's first amendment protections. It is well established that it is the duty of the trial court to accurately instruct the jury as to the law to be applied in a given case. (*People v. Gambony*, 402 Ill.74, 83 N.E.2d 321.) This was not done here, and such error necessitates reversal by this court.

■■ Although this case will be remanded for a new trial on the basis of our disposition of the above issue, we also note that defendant contends that he was entrapped into selling the allegedly obscene material. We do not agree. It is well established that one who has the intent or predisposition to commit a crime may not assert the defense of entrapment merely because law enforcement officials or their agents afforded such a person the opportunity to commit the crime. (*People v. Gonzales*, 125 Ill.App.2d 225, 260 N.E.2d 234; *People v. Lewis*, 26 Ill.2d 542, 187 N.E.2d 700.) In the instant case, when Smith and Phillips went to defendant's store on September 13, 1971, and asked for the merchandise in question, defendant immediately procured said material from a paper sack 12 to 13 feet away. Defendant testified that he had obtained the books in the sack 3 months prior to this incident. He further stated that he had previously sold other books from the same sack. This clearly indicates a predisposition to commit the crime charged, and defendant may not avail himself of the defense of entrapment. We see no need to discuss the other errors assigned.

For the reasons stated above the judgment of the circuit court of Adams County is hereby reversed and the case remanded for a new trial.

Reversed and remanded.

CRAVEN, P. J., and SMITH, J., concur.