THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LINDA BETTER *et al.,* Defendants-Appellants.

(No. 60699; ▮▮▮▮▮▮▮▮)

First District (5th Division)—October 10, 1975.

*Rehearing denied November 7, 1975.*

Julius Lucius Echeles and Carolyn Jaffe, both of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and John F. Brennan, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

After a bench trial, defendants were convicted of obscenity in violation of section 11—20 of the Criminal Code. (Ill. Rev. Stat. 1973, ch. 38, par. 11—20.) Stalle was fined $100, Better $200, and Cardamon $400. They appealed, contending that: (1) the Illinois obscenity statute is unconstitutional; (2) the acts with which they were charged were not proven obscene as defined by statute; and (3) the trial court applied an improper standard of contemporary community standards. In addition, Cardamon contends that: (1) the complaints filed against him improperly charged an offense, and (2) he was not proven guilty beyond a reasonable doubt. Likewise, Better and Stalle contend that it was not established that they had danced for gain, or that they acted knowingly.

The following evidence pertinent to this appeal was adduced.

*Lieutenant Frank Braun, for the State*

He is a Cook County sheriff's police officer and commander of the Vice Control Unit. He has been a police officer for twelve years and head of his unit for two. At about 10:15 p.m. on March 21, 1974, he was with an assistant State's Attorney and Bruce Frasch, a police investigator, at the Upstairs Lounge, a bar located at 8550 W. Golf Road in Niles, Illinois. Inside he saw John Cardamon and Linda Better. Better was dancing on a dimly lit stage which was one foot above the floor. Cardamon was stationed in a position from which he could observe the stage. The lighting, though dim, was sufficient for the witness to see the performance on stage. The onlookers inside the lounge were mostly couples

ranging from 20 to 45 years of age. Some unescorted men were also present.

Better had a brassiere-type garment on the upper part of her body and a G-string on the lower part. As she danced to juke-box music, she removed the brassiere and the G-string, leaving only a small patch over her pubic area. She placed the G-string between her legs and simulated male masturbation with it. She then removed the pubic patch and danced in the nude for about three minutes. At the conclusion of her performance, the assistant State's Attorney accompanying Braun determined that the dancing was illegal, whereupon Braun arrested both Better and Cardamon. While being questioned at the police station, Better indirectly stated in Braun's presence that the dancers at the lounge were hired. According to Braun, "The girls stated who hired them. * * * Miss Better did."

On March 25, 1974, at about 10:30 p.m. the witness was again present at the Upstairs Lounge and saw Better, Cardamon and Stalle on the premises. He made no written reports concerning his observation of occurrences at the lounge on either March 21 or 25.

*Investigator Bruce Frasch, for the State*

He is a Cook County sheriff's police investigator and is assigned to the Vice Control Unit. He has been a police officer for five years. Prior to March 21, 1974, he had been to the Upstairs Lounge on at least three occasions and had observed Better dancing in the nude. At about 10:20 p.m. on March 21, he was at the lounge with an assistant State's Attorney and with Lieutenant Braun. He substantially corroborated Braun's testimony concerning the stage lighting, the lounge patrons, Better's dancing, and the assistant State's Attorney's role in Better's and Cardamon's arrests. He also testified that the lighting, though dim, was sufficient for him to observe Better's nudity and that she while nude, touched her breasts and the area of her vagina with her hands. In addition, during the nude part of her performance amidst cheering and hollering, two couples mounted the stage and attempted to disrobe, but were stopped by Cardamon. Frasch believed him to be the manager.

On March 25, 1974, the witness was again present at the lounge and saw Better, Cardamon and Stalle on the premises. Cardamon was standing near the service bar.

*Investigator Joseph Dornbos, for the State*

He is a Cook County sheriff's police investigator and is assigned to the Vice Control Unit. He has been a police officer for four years. On March 25, 1974, he was with an assistant State's Attorney at the Upstairs Lounge and saw Better, Cardamon and Stalle inside. He substantially corroborated Braun's and Frasch's testimony concerning the stage lighting. On

March 25, both Better and Stalle danced in the nude for about two or three minutes, and each, while nude, fondled her breasts and vaginal area. Cardamon was near the service area of the bar and had an unobstructed view of the stage, which was about 30 to 40 feet away from where he was standing. The lighting was sufficient for Dornbos, who was also about 30 to 40 feet away from the stage, to observe the dancing. After the assistant State's Attorney determined that the dancing was obscene, Better, Cardamon and Stalle were arrested.

On March 27, 1974, he again was present at the Upstairs Lounge. He saw Cardamon inside but did not see Better or Stalle. Some other individuals performed nude dances, and Cardamon was again arrested. In his written reports concerning the nude dancing at the lounge on March 25 and 27, the witness did not mention any touching by the dancers of their breasts or vaginal area.

*Sergeant Howard Anderson, for the State*

He is a Cook County sheriff's police officer and is assigned to the Vice Control Unit. He has been a police officer for about twelve years. He was at the Upstairs Lounge on March 27, 1974, and saw a woman dancing on stage in the nude. He also saw Cardamon, who had an unobstructed view of the stage, standing at the top of the stairs at the entrance to the lounge.

*Katherine Krause, called by the State*

She is the sole owner of the Upstairs Lounge and the holder of its liquor license. Her husband, John Cardamon, is employed by her to help with the business and gives her advice on business matters, but is not considered by her to be the manager of the business. She primarily hires and discharges all business employees, but her husband has some authority to act in her absence.

*Cora Stalle on her own behalf*

She is a part-time dancer and began strip-dancing about two years prior to her arrest. She never formally studied strip-dancing, but employs many of the movements taught in modern dance training in her routines. She danced in the nude at various lounges in the Midwest area, including a Lake County lounge, before her engagement with the Upstairs Lounge. She is paid in cash for performing.

On March 25, 1974, she danced completely in the nude at the Upstairs Lounge and was arrested. During her performance, she did not fondle her breasts or her vagina. Her hand movements might have given the illusion that she was touching her body when she was not. She might have touched her breasts while removing her brassiere, but the touching was noncaressing in nature. She did touch her vaginal area while removing her G-string, but the touching was necessary for removal of the

covering and was noncaressing. She did not make any obscene gesture around her pubic area or expose her vagina during her performance.

*Linda Better on her own behalf*

She is a professional dancer and began strip-dancing sometime after 1969. She danced in the nude at various lounges and night clubs across the United States before her engagement with the Upstairs Lounge.

Between March 18 and March 25, 1974, she danced in the nude at the Upstairs Lounge. On March 21 and 25, she was arrested. On both occasions, she was completely nude for approximately one minute, and neither fondled her genitals nor made any motions with her garments to simulate masturbation.

*Katherine Krause for the defendants*

She hired Better and Stalle through an agency and pays them for their services. In her absence, however, it is possible that her husband, Cardamon, might pay the dancers. Her husband stopped the two couples from disrobing on the stage on March 21. At the time of the arrests, he was not the manager of the lounge, but the bartender.

At the close of all the evidence, the trial court found Better and Stalle guilty of performing an obscene dance, Better on two charges and Stalle on one. The trial court also found Cardamon guilty on two charges of presenting an obscene dance and failing to inspect the nature or content of an obscene dance. Each defendant was fined accordingly. From this judgment all three defendants appeal.

OPINION

Defendants' first contention is that the Illinois obscenity statute (Ill. Rev. Stat. 1973, ch. 38, par. 11—20) is unconstitutional. Defendants' contention is premised on two propositions: (a) the nude dancing in the instant case is a form of expression which can be regulated only in accordance with constitutional standards; (b) the Illinois obscenity statute, as applied to the dancing in the instant case, does not comport with constitutional standards because it does not provide for a prior judicial determination of obscenity and because it does not define obscenity with sufficient specificity.

■■ The first proposition of defendants' contention is without merit. We recognize that nudity and obscenity are not synonymous. Nudity *per se* is not obscene, and may indeed be constitutionally protected expression (*Erznoznik v. City of Jacksonville*, 422 U.S. 205, 45 L.Ed.2d 125, 95 S.Ct. 2268), whether in a common bar or in a refined theatre. (*Salem Inn, Inc. v. Frank* (2d Cir. 1975), — F.2d —.) While constitutional standards must be applied in regulating pure speech, such standards

need not be applied in regulating nonexpressive conduct. The United States Supreme Court has consistently drawn a distinction between conduct, which may be regulated by the State, and expression, which may not be regulated except upon proof of obscenity (*Miller v. California*, 413 U.S. 15, 37 L.Ed.2d 419, 93 S.Ct. 2607), or upon proof of a clear and present danger to a legitimate government interest. (*Schenck v. United States*, 249 U.S. 47, 63 L.Ed. 470, 39 S.Ct. 247.) In *Starshock, Inc. v. Shusted* (D.N.J. 1974), 370 F.Supp. 506, 509, the New Jersey Federal District Court considered the question of categorizing nude dancing as conduct or expression and concluded:

> "In no way can the movements of the 'Ladies of the Ensemble' performed in unabashed nudity be considered an art form containing the slightest iota of 'self-expression.' 'Swan Lake', it was not! Although advertised as 'Nude Interpretive Dancing', it was neither interpretive or dancing—just nude, a 'Go-go' performance bereft of outer dress. What we have here is the cheap exploitation of human sexuality for purely commercial purposes."

However, the instant case involves more than mere nudity. As the trial court stated, "I think there is more involved here than nude dancing." There was credible testimony from three State witnesses that Better and Stalle did not merely dance in the nude, but also fondled their breasts and vaginal area while dancing. Likewise, Lieutenant Braun testified that Better simulated male masturbation with her G-string on March 21. On the basis of this testimony, it was not unreasonable for the trial court to conclude that the nude dancing which occasioned the defendants' arrest did not express any particular idea and was not, therefore, expression protected by the First Amendment. Accordingly, constitutional regulatory standards are inapplicable. See *Cheetah Enterprises, Inc. v. County of Lake*, 22 Ill.App.3d 306, 317 N.E.2d 129.

■■ The second proposition of defendants' contention is equally without merit. In *People v. Ridens*, 51 Ill.2d 410, 282 N.E.2d 691, the Illinois Supreme Court held that the mere arrest and prosecution of those charged with obscenity, without any blanket suppression of possibly protected expression, did not necessitate a prior judicial determination of obscenity. In the instant case, there was no interruption with the post-arrest operation of the Upstairs Lounge, and the allegedly obscene dancing continued during the judicial process. Hence, there was no suppression of possibly protected expression, and thus no need of a prior judicial determination of obscenity. Likewise, in *People v. Ridens*, 59 Ill.2d 362, 321 N.E.2d 264, the Illinois Supreme Court addressed itself to the question concerning the specificity with which the Illinois obscenity statute defines obscenity. In its decision, the court held that the

Illinois statute, which characterizes as obscene essentially anything whose "predominant appeal is to prurient interest * * *," was neither unconstitutionally vague in its definition of obscenity nor unconstitutionally overbroad in its application to questionable acts, works, or materials.

■■ Defendants' second contention is that the dancing which Cardamon presented and which Better and Stalle performed was not proven obscene under the Illinois obscenity statute. Section 11—20(b) of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 11—20(b)) provides a two-fold test for determining the obscenity of an act, work or material in question:

> "A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex, or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters."

The statute also allows the court to consider evidence concerning the audience for which the act, work or material was intended. The determination of what is obscene in the statutory or constitutional sense is not a question of fact but rather a question of fact mixed with a determination of law and is ultimately a matter within the province of the court. (*Zeitlin v. Arnebergh* (1963), 59 Cal.2d 901, 383 P.2d 152, 31 Cal. Rptr. 800.) In the instant case, the trial court heard testimony concerning the nature and content of the dancing in question from three police officers and from the dancers themselves. In addition, the court heard testimony concerning the composition and demeanor of the audience in the lounge. It was undisputed that Better and Stalle were completely nude during part of their performance, and the three police officers offered clear and consistent testimony concerning the dancers hand motions while performing. There was also undisputed testimony that two couples attempted to disrobe at the conclusion of one performance. In a nonjury obscenity trial, the trial court is charged with the responsibility of determining both the facts, including the credibility of witnesses, and the law, including the interpretation of constitutional and statutory standards. The record in the instant case clearly indicated that more was involved than mere nudity, and the trial court, after hearing all the evidence, concluded that the dancing in question was obscene. We find no reason to disturb that conclusion. Defendants' contention is without merit.

■■ Defendants' third contention is that the trial court improperly applied a countywide standard instead of a statewide standard in determining contemporary community standards for obscenity. In connection with this contention, defendants argue that expert testimony should have

been permitted by the trial court in order to aid the fact-finder in determining contemporary community standards. We disagree. In Illinois, the proper measure for determining contemporary community standards is statewide, not countywide, in scope. (*People v. Butler*, 49 Ill.2d 435, 275 N.E.2d 400.) It is clear from the record that the trial court rejected the State's Attorney's proposal to apply a countywide standard. The trial judge specifically declared, "I have to disagree with your [countywide] standard, Mr. State's Attorney * * *." Concomitantly, defendants' argument that the trial court should have allowed expert testimony on the subject of contemporary community standards is without merit. The fact-finder, be it a jury or a trial judge, is best qualified to determine contemporary community standards. Expert testimony concerning contemporary community obscenity standards, while desirable, is not constitutionally mandated, and the absence of such testimony in the instant case did not prevent the trial court from determining, as fact-finder, the applicable community standards.

In addition to their three joint contentions, defendants present separate contentions for our review.

■■ Cardamon's first separate contention is that the complaints against him did not properly charge an offense because they allege two states of mind which are asserted to be mutually exclusive. Cardamon was charged with committing the offense of obscenity on March 21 and 25, 1974 "in that he did knowingly and unlawfully present an obscene dance, and that he did recklessly fail to exercise reasonable inspection which would have disclosed the nature or content thereof." Section 11—20 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 11—20) provides that:

> "A person commits obscenity when, with knowledge of the nature of content thereof, or recklessly failing to exercise reasonable inspection which would have disclosed the nature of content thereof, he:
>
> * * *
>
> (2) Presents * * * an obscene * * * dance * * *."

While the statute frames the requisite states of mind in the disjunctive, we do not consider the statute's provisions to be mutually exclusive. There was an adequate basis in the record from which the State was able to demonstrate that Cardamon either had knowledge about the content of the dancing, or recklessly failed to exercise a reasonable inspection of its content for himself. It is clear from the record that Cardamon had an unobstructed view of the stage on which the nude dancing was taking place and that on March 21 he stopped two couples who had mounted the stage from disrobing during a nude dancing per-

formance. The Illinois Criminal Code defines knowledge as conscious awareness that certain circumstances exist. (Ill. Rev. Stat. 1973, ch. 38, par. 4—5(a).) Certainly the State was able to demonstrate that Cardamon was consciously aware of the nude dancing on stage. It is equally clear from the record that Katherine Krause, Cardamon's wife and "employer," never testified as to being at the lounge on the nights Cardamon was arrested and that Cardamon had some authority to act and could have even paid the nude dancers for their services in her absence. Cardamon failed to do anything about the nude dancing before or after the incident involving the two couples on March 21, and the dancing continued for at least six more days. The Illinois Criminal Code defines recklessness as a conscious disregard for a substantial and unjustifiable risk that certain circumstances exist or that a result will follow. (Ill. Rev. Stat. 1973, ch. 38, par. 4—6.) Certainly the State demonstrated that Cardamon consciously disregarded the risk that the nude dancing would incite indecent acts by onlookers when he had an opportunity to inspect the content of the dance.

■■ Cardamon's second separate contention is that he was not proven to have presented an obscene dance beyond a reasonable doubt. In a bench trial, credibility of witnesses is for the trial judge to determine. (*People v. Wright*, 3 Ill.App.3d 262, 278 N.E.2d 175.) The decision of the trial judge as to credibility of witnesses will not be disturbed unless it is based upon evidence which is so unsatisfactory as to raise a reasonable doubt of defendant's guilt. (*People v. Catlett*, 48 Ill.2d 56, 268 N.E. 2d 378.) The testimony of one witness, if positive and credible, is sufficient to sustain a conviction even though contradicted by the accused. (*People v. Bonds*, 132 Ill.App.2d 827, 270 N.E.2d 575.) In the instant case, there was positive and credible testimony from the four State witnesses concerning Cardamon's presence and actions inside the lounge. Furthermore, there was no indication in the record that Katherine Krause, Cardamon's wife and the alleged business manager, was at the lounge on the nights Cardamon was arrested, and she testified that he had some authority to act and might even pay the dancers in her absence. On balance, the record contained an adequate evidentiary basis from which the trial court could conclude that Cardamon had presented an obscene dance on March 21 and 25.

■■ Better's and Stalle's first separate contention is that they were not proven to have danced for gain—an element of the offense of obscenity. We disagree. An appellate court is not justified in disturbing the findings of a trial court as to questions of fact unless the findings are contrary to the manifest weight of the evidence. (*People v. Gilliam*, 83 Ill.App.2d 251, 227 N.E.2d 96.) There was adequate evidence in the

testimony of arresting officer Frank Braun, Stalle, and lounge owner Katherine Krause to support the trial court's finding that Better and Stalle were paid to dance.

Better's and Stalle's second separate contention is that they were not proven to have performed an obscene dance with knowledge that the dance was obscene. Section 11—20(a) of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 11—20(a)) provides that a person must have "knowledge of the nature or content" of the obscene act, work or material in question in order to commit obscenity. The statute does not require that an accused know that a particular act, work or material is obscene, but only that he know what the nature or content of the act, work or material is. Inferences to be drawn from facts in evidence are for the trial court to make, and unless they are inherently impossible or unreasonable, they should be accepted on appeal. (*People v. McNulty*, 90 Ill. App.2d 465, 233 N.E.2d 229.) In the instant case, there was adequate evidence in the testimony of Better and Stalle from which the trial court could draw the inference that both knew the nature or content of their acts on the nights they were arrested. It wasn't a prayer meeting.

The order of the trial court is affirmed.

Affirmed.

BARRETT, P. J., and SULLIVAN, J., concur.