THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
BARBARA HART, Defendant-Appellant.

Second District    No. 80-542

Opinion filed October 30, 1981.

LINDBERG, J., specially concurring.

J. Steven Beckett and Glenn A. Stanko, both of Reno, O'Byrne & Kepley, of Champaign, and Daniel J. Cain, of Sreenan and Cain, of Rockford, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko, of State's Attorneys Appellate Service Commission, of Elgin, and Martin N. Ashley and Gillum Ferguson, both of State's Attorneys Appellate Service Commission, of Mt. Vernon, of counsel), for the People.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:
The defendant was charged with making available to the public three allegedly obscene films which were located in an adult book store at 322 East State Street, Rockford, Illinois. (Ill. Rev. Stat. 1979, ch. 38, par. 11—20(a)(3).) Following a jury trial, she was found guilty of obscenity and sentenced to 30 days in the county jail and fined $1,000. She raises six

issues in this appeal. We find reversible error occurred in two instances: when the jury was instructed that the State did not have to "produce expert testimony on the question of whether or not the movies are obscene," and when the State failed to provide the jury with sufficient evidence of the defendant's scienter.

In view of our holding, we do not consider the other four issues raised by the defendant. However, and notwithstanding our holding, we wish to remark upon an error which we believe would have compelled us at the very least to remand this cause for resentencing of the defendant. In *People v. Conover* (1981), 84 Ill. 2d 400, the Illinois Supreme Court determined when section 5—5—3.2(a)(2) may be considered to be a factor in aggravation during sentencing. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(a)(2).) Section 5—5—3.2(a) provides:

> "The following factors shall be accorded weight in favor of imposing a term of imprisonment or may be considered by the court as reasons to impose a more severe sentence under Section 5—8—1:
>
> * * *
>
> (2) the defendant received compensation for committing the offense."

The *Conover* court held:

> "* * * that section 5—5—3.2(a)(2) of the Unified Code of Corrections may be considered as a factor in aggravation only when one is remunerated, * * * to commit an offense, whether the offense is burglary or theft, where proceeds may be taken, or the crime is one that does not involve proceeds, *e.g.*, aggravated battery." 84 Ill. 2d 400, 405.

At sentencing, the court in the instant case stated its reasons for imposing a sentence of imprisonment:

> "* * * I'm going to enter a Judgment of Conviction and having due regard for the character of the defendant and nature and circumstances of the offense and the public interest, find that a sentence of jail is an appropriate disposition. *And I do this because first, the defendant was, in fact, receiving compensation for doing what she was doing* and secondly, because I believe that the sentence in [*sic*] necessary to deter others from committing the same crime." (Emphasis added.)

We believe the court's consideration of the fact the defendant was paid to work at the bookstore was improper under *Conover* and would mandate a vacation of the sentence and remandment for resentencing were it not for our finding that the defendant's conviction must be reversed.

A summary of the facts is necessary. At 6:30 p.m. on August 30, 1979, Officer Richard Galvanoni of the Rockford Police Department entered an

adult bookstore located at 322 East State Street, Rockford, Illinois. He asked the clerk on duty, defendant Barbara Hart, for $5 worth of quarters and gave her a $20 bill. He asked her "if the movies in the back were any good." She said she did not know. He asked if there was a "browsing" fee, and she said not at that time. Officer Galvanoni proceeded to the projection area, or arcade, which is a room located about 30 feet away from the front counter where the defendant was stationed. The arcade contained approximately 18 three-foot by four-foot booths; each booth had a door on which were mounted framed posters graphically indicating a choice of movie "A" or "B" with a scene taken from the movie and showing the title thereof. A coin-operated projector with a different slot for movie "A" or "B" was located inside the booth. Upon placement of a quarter in the slot, the movie chosen automatically projected onto a screen located on the interior side of the booth door. The movie runs for a short time; a total of six quarters must be fed into the slot in order to see the entire 10-minute movie. Officer Galvanoni viewed three movies in this manner. At trial, the jury viewed all three of the movies, which were described in detail in Galvanoni's affidavit for search warrant. Generally described, they depicted fellatio, masturbation, analingus, and anal intercourse by and between two white males; fellatio, cunnilingus and intercourse between a black male and a white female; and simultaneous combinations of acts of cunnilingus, fellatio and/or intercourse by and between two white females and one white male. None had a sound track; they were silent movies. The store window and entrance door had been painted to prevent viewing from the outside by all except the tallest persons, and admittance was restricted to persons over 18 years of age. The interior of the store and the walls were filled with racks holding paperbacks and hundreds of "different various types of magazines" and "marital aids" such as "rubber dildos and items of that nature."

After watching the three movies and browsing in the store for awhile, Galvanoni asked the defendant "if any of the movies that were playing in the back were for sale at the front of the store." She responded "she didn't know but possibly the Swedish Erotica films may be the same in the back as they sold in [sic] the counter." Officer Galvanoni then left the store, and the three films at issue were seized pursuant to a search warrant the following evening, August 31, 1979. The defendant was not present at the store when the films were seized; a warrant for her arrest was issued on August 31, and she posted bond on September 1, 1979.

The defendant charges it was error for the court to give this non-IPI instruction which was tendered by the State and objected to by the defendant:

> "The State is not required to produce expert testimony on the question of whether or not the movies are obscene."

*People v. Ridens* (1972), 51 Ill. 2d 410, and *People v. Hobbs* (1978), 59 Ill. App. 3d 793, were cited as authority for the instruction.

At trial, the State's evidence consisted of Officer Galvanoni's testimony, testimony of the officers who executed the search warrant and who transferred the three films in question from cassettes to reels, and the films themselves. The defendant's motion for a directed verdict was denied and she presented two witnesses, Doctor Thomas Hollon and Michael Mullen. Dr. Hollon, a clinical psychologist with extensive experience in diagnostic evaluation and counseling of persons with sexual disorders, cited the 1970 report of the President's Commission on Obscenity and Pornography as the most authoritative study on the relationship between sexually explicit material and human sexuality. He testified the commission's report showed there was no causal relationship between exposure to sexually explicit materials and antisocial behavior. Further, the report showed repeated exposure to such materials resulted in "satiation"; that is, a lack of response to the explicit stimuli; a failure to become aroused. He defined "prurient interest" as a sick or morbid interest in nudity, sexuality or excretia, and stated that there can be a physiological response (sexual arousal) to sexually explicit material which flows from a completely normal interest in sex. He stated his view that normal sexual behavior encompasses a wide range of sexual behavior and acts between consenting adults, and that the conduct portrayed in the three films fell within this range of normal sexual behavior. His opinion was that the films do not appeal to prurient interest, and that although they would not have any scientific or instructional value, they would have recreational or informational value, albeit to a limited number of persons.

Michael Mullen, an assistant in a Rockford legal firm, testified regarding his purchase of a number of so-called "men's magazines" at various locations in Rockford. "Hustler" was purchased at a Stop-N-Go store; "Cheri" was purchased at Ekstrom's in Rockford. There were no restrictions on the accessibility of these magazines at either store. A copy of "Velvet" was purchased at Seventh Street Recreation in Rockford; "High Society" was purchased at Canterbury Books; "Club International" was purchased at a different Stop-N-Go in Rockford. Again, there were no restrictions on the accessibility of these magazines; Stop-N-Go had a five-minute time limit on browsing, however. The magazines range in price from $2.75 to $3.25 per copy. Generally described, the magazines feature photos of nude men and women posed singly, as couples, or in groups in a variety of poses which suggest imminent or actual hetero- or homosexual activities including masturbation, fellatio, cunnilingus and intercourse. The defendant tendered these magazines as tending to show the degree of acceptance in the State of such materials, and they were admitted over the State's objection.

The defendant asserts the instruction in question should not have been given because it incorrectly interprets prior case law, creates an impression to the jury of a lower prosecutorial burden of proof, unfairly lessens the credibility of the evidence given by the defendant's witnesses, and increases the likelihood the jurors will substitute their own personal judgments or biases in place of the proper Statewide standard. The State urges us to adhere to our prior holding in *People v. Hobbs* (1978), 59 Ill. App. 3d 793, wherein we approved the identical instruction in dicta after finding the issue had been waived by the defendant. The State notes that our holding in *Hobbs* that the jury may determine the obscenity of materials in question from its own inspection of them, without the assistance of expert testimony, is an accurate statement of the law as derived from *People v. Ridens*, cited above, and *City of Chicago v. Kimmel* (1964), 31 Ill. 2d 202.

■■ We decline to accede to the State's urging. First, in *Hobbs*, we determined the defendant had waived consideration of the instruction issue and went on to approve the use of the instruction in dicta. Although dicta is often persuasive, it is not binding authority within the rule of *stare decisis*. (*Williams v. Crickman* (1980), 81 Ill. 2d 105.) Second, under the facts of this case we believe the instruction is an unfair and highly prejudicial application of the authority of *Ridens*.

In *Ridens*, the defendants offered one nonexpert witness in an attempt to establish that the allegedly obscene magazines were in accord with the community standards of the city of Moline. The city presented the testimony of the police officers who purchased the magazines and the magazines themselves were admitted into evidence. "The city however, offered *no expert or opinion evidence relating to community standards* of obscenity." (Emphasis added.) (*People v. Ridens* (1972), 51 Ill. 2d 410, 413.) The court there then rejected the defendants' argument that the trial court should have directed a verdict in their favor either at the close of the State's evidence or all the evidence because the prosecutors failed to meet their burden of proof by establishing the constitutional standards for obscenity as required in *Roth*, as incorporated in the Moline ordinance. (*Roth v. United States* (1957), 354 U.S. 476, 1 L. Ed. 2d 1498, 77 S. Ct. 1304.) It held that the prosecutors met their burden of proof when they introduced into evidence the magazines:

> "While the courts of some other States have held a contrary view on this question, we have determined that no further proof of the *Roth* criteria, other than the offending publications themselves, is required. In *City of Chicago v. Geraci*, 46 Ill. 2d 576, where no evidence was offered other than the publications themselves, at page 578, we stated: 'In a case of this nature, the court must make an independent constitutional judgment as to whether the publica-

tions in issue are obscene or constitutionally protected. [Citations.]'
And, in *City of Chicago v. Kimmel*, 31 Ill. 2d 202, at page 206, we
stated: 'Defendant further contends that the proof of his guilt was
deficient in that there was no evidence of contemporary com-
munity standards, that there was no evidence of the obscene
content of the books, and the books were not read by the trial
court, or by the jury in open court. Defendant offered no evidence
relating to contemporary community standards, and in the absence
of such evidence, the triers of fact "are the exclusive judges of what
the common conscience of the community is." *(Roth v. United
States*, 354 U.S. 476, 490, 1 L. Ed. 2d 1498, 1510.)' This rationale
would be accentuated in the case at bar since the publications are
of a pictorial format only, or of such format with innocuous
attendant prose. Thus, we hold that the plaintiffs met their burden
of proof when they introduced in evidence the magazines, which
consist almost exclusively of photographs." *People v. Ridens*
(1972), 51 Ill. 2d 410, 415-16.

*Ridens* cited *Geraci* for the proposition that the court must make "an
independent constitutional judgment" as to whether the publications in
issue are obscene or constitutionally protected. *Geraci* cited back to
*Kimmel* at pages 207 and 208 for that proposition. *(City of Chicago v.
Geraci* (1970), 46 Ill. 2d 576, 578.) It is clear, however, that *Kimmel* at
those page references was referring to the duty of the reviewing court, not
the trial court. Further, the *Kimmel* concept of the jury as the "exclusive
judges of what the common conscience of the community is" predated
the premiere definitive pronouncement of the "community" as being the
*Statewide* community, and not the microcosmic community indigenous
to the members of the jury or the trial court. See *People v. Butler* (1971),
49 Ill. 2d 435.

*Ridens* has been strictly construed by the appellate courts. *(Cf.
People v. Price* (1972), 8 Ill. App. 3d 158, 160-61 *(prima facie* case was
presented where State presented four witnesses and introduced the
purportedly offending motion picture film into evidence, even though
none of the witnesses testified that film satisfied the three elements
necessary for obscenity convictions); *City of Chicago v. Geraci* (1973), 10
Ill. App. 3d 688, 691 (four magazines found to be of the type to be
described in *Ridens* and were, therefore, obscene at law); *People v. Ward*
(1975), 25 Ill. App. 3d 1045, 1046 (State's evidence consisting of magazines
made up almost exclusively of photographs constituted sufficient proof to
establish and support conviction for violation of obscenity statute per
*Ridens*, and State's failure to present opinion testimony as to contempo-
rary community standards was not fatal to the State's case); *People v.
Watson* (1975), 26 Ill. App. 3d 1081, 1084-85 (defendant's conviction

reversed and remanded where trial court failed to instruct the jury that contemporary Statewide community standards be applied in determining obscenity, despite fact the State presented no evidence as to any type of contemporary Statewide community standard); *People v. Mabie* (1975), 30 Ill. App. 3d 399, 401 (trial court did not err in refusing to direct verdict for defendant on the basis the State did not meet its burden of proof because no evidence of contemporary community standards was introduced); *Motion Picture Appeal Board v. S. K. Films* (1978), 65 Ill. App. 3d 217, 226-27 (decision of the trial court not against the manifest weight of the evidence where the motion picture board's burden of proof as established by *Ridens* was met when the court viewed the film in question).) In each of these cases, the defendant chose not to present any evidence, and the State's evidence consisted almost solely of the offending media and the investigating officers' testimony.

Contrarily, as detailed above, the defendant in the case at bar did offer evidence tending to establish the nonobscenity of the films in question. The jury was instructed that in order to prove the charge of obscenity the State had to prove, *inter alia*:

> "(1) That the motion picture films * * * are obscene" (People's instruction No. 8 A)

and

> "A thing is obscene: (1) if considered as a whole, its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion; and (2) if it is patently offensive to community standards for the State of Illinois in its description and representation of sexual matters; and (3) if the thing is utterly without any redeeming social value. *All three elements must exist* in each motion picture before you can find that each is obscene. * * *." (Emphasis added.) People's instruction No. 9 A.

In the instant case, the jury was comprised of five men and seven women whose residency in Winnebago County ranged from four years to 43 years in length, the average being 22 years. Most stated during *voir dire* that they either did not or only occasionally read any nonlocal newspapers. Six of the jurors had never been exposed to any sexually explicit materials; two of the jurors were not asked about their exposure to such material. This jury was instructed that:

> "[I]n order to find material obscene [they] must conclude, that the average person, *applying contemporary community standards*, would find the material, taken as a whole, is obscene. *Under Illinois law, a statewide standard must be used in making this determination.*" (Emphasis added.)

This jury was then instructed on the authority of *Ridens* and *Hobbs*—after just having heard the defendant's expert and lay witnesses testify—that:

"The State is not required to produce expert testimony on the question of whether or not the movies are obscene."

As we observed in *People v. Nelson* (1980), 88 Ill. App. 3d 196, 198: "Clearly, a statewide 'community standard' based upon public acceptance of material claimed to be obscene *is an essential element of proof of the charge.*" (Emphasis added.) In that case, we reversed the trial court's ruling denying the defendant admission into evidence of the results of a survey conducted amongst 770 adults randomly selected from 77 areas into which the State had been equally divided according to population. The survey sought to determine the degree of public acceptance in the State of Illinois of sexually explicit materials. Aside from the fact that evidence of this type—absent any well-founded objections thereto—is specifically made admissible by section 11—20(c)(4) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 11—20(c)(4)), we felt there that the survey results indicating that a majority, albeit a slim one, of the Illinois residents considered it acceptable for adults to view sexually explicit materials weighed heavily against the finding that the movies in that case were "patently offensive." We observed in that case that survey evidence, in fact, may be the only way to prove degrees of acceptability of such material as distinct from its availability. *Cf. Smith v. California* (1959), 361 U.S. 147, 165, 4 L. Ed. 2d 205, 218, 80 S. Ct. 215, 225 (Frankfurter, J., concurring) (community standards of the psychological or the physiological consequences of questioned literature can as a matter of fact hardly be established except through experts).

■■ Within the context of the circumstances of this case as described above, it is our belief the questioned instruction was unnecessary surplusage, served no purpose but to lessen the credibility of the testimony given by the defendant's witnesses, and greatly increased the likelihood that the jurors may have impermissibly applied a personal, rather than a Statewide, community standard. Specific tasks require specific tools. The jury, charged with the duty to judge the materials by applying a contemporary Statewide standard—yet, as noted by the defendant, lacking any evidence from the State as to what that standard might be per the authority of *Ridens*—must necessarily fall back on those standards which have been born of their *own* observations and *own* experiences in life. This is not the Statewide standard mandated by *People v. Butler* (1971), 49 Ill. 2d 435. Under these circumstances, we believe the right of the presumed-innocent defendant to introduce her own evidence tending to establish that the materials were not obscene should not have been offset by the instruction as to the State's corresponding nonduty in this respect.

Because the Statewide community standard is so integrally related to a finding of the "patently offensive" nature of materials alleged to be obscene (*cf. People v. Nelson*), we conclude the error in giving the

instruction at issue could have materially affected the outcome of the case and, as such, constituted reversible error.

The second basis which we believe mandates reversal of the defendant's contention is that the State failed to provide sufficient evidence that she "made available for viewing by the general public" or "then knew the nature or content or recklessly refused to exercise reasonable inspection of the nature or content" of the three films. The State urges us to reject her contention in this regard, citing *People v. Doto* (1977), 53 Ill. App. 3d 62, *People v. Glass* (1976), 41 Ill. App. 3d 43, *People v. Rode* (1978), 57 Ill. App. 3d 645, and *People v. Spellman* (1978), 58 Ill. App. 3d 648.

We find the cases cited by the State distinguishable. In *Doto*, *Glass* and *Rode*, the defendants were clerks who actually sold the magazines in question to the investigating officers. It was evident those clerks were aware of what particular magazine was being purchased. In *Spellman*, the defendant was the manager of the adult bookstore, actually sold the magazine to the investigating officer, was involved in selecting the books sold at the store, and admitted that he had looked through the magazine in question before he sold it. The State contends the posters on the booth doors in the case at bar were tantamount to the magazine covers in the above-cited cases, and the defendant's scienter in the case at bar is thereby established. The State also contends that her reference to the fact that the "Swedish Erotica films may be the same in the back as they sold in [*sic*] the counter" shows a knowledge of at least some of the films and raises an inference of knowledge as to the rest.

We cannot accept the State's contentions. We believe that to do so would be to establish that all materials contained in an adult bookstore are *per se* obscene and all persons working therein are *per se* guilty of obscenity. Although the State's evidence established the defendant gave Galvoni $5 worth of change in quarters, it did not establish that she knew which movies he was going to choose out of 36 possible choices, nor that the other 33 movies in the arcade were obscene, nor that she knew how much the movies cost—if indeed evidence of expense is probative of obscenity in any way at all. Likewise, defendant's reference to the "Swedish Erotica films" was ambiguous. Even conceding the inference that this reference meant the defendant had ever been in the arcade, there was no evidence that one or some of the films showing in the arcade were the "Swedish Erotica films," or that they were obscene if they were showing.

Every publication or film found in an establishment limited to adult patronage, upon payment of an admission fee at certain times, and charging high prices may not be presumed to be obscene. (*Cf. City of Chicago v. Geraci* (1970), 46 Ill. 2d 576 (where the supreme court found 16 out of 17 magazines in question to be constitutionally protected despite

depictions of explicit frontal nudity of males and females wherein their genitals were the focal points of the pictures).) We believe that to find the defendant guilty of obscenity in this case would result in an abandonment of the requirement of scienter, without which element of proof there would virtually be strict or absolute criminal liability for obscenity, a circumstance which has been held to be unconstitutionally inhibitive of the first amendment freedom of expression. (*Smith v. California* (1959), 361 U.S. 147, 4 L. Ed. 2d 205, 80 S. Ct. 215.) In *Smith*, it was stated:

"For if the bookseller is criminally liable without knowledge of the contents, and the ordinance fulfills its purpose, he will tend to restrict the books he sells to those he has inspected; and thus the State will have imposed a restriction upon the distribution of constitutionally protected as well as obscene literature. It has been well observed of a statute construed as dispensing with any requirement of scienter that: '*Every bookseller would be placed under an obligation to make himself aware of the contents of every book in his shop. It would be altogether unreasonable to demand so near an approach to omniscience.*' [Citation.]" (Emphasis added.) 361 U.S. 147, 153, 4 L. Ed. 2d 205, 211, 80 S. Ct. 215, 218.

Accordingly, the judgment of the circuit court of Winnebago County is reversed.

Judgment reversed.

SEIDENFELD, P. J., concurs.

Mr. JUSTICE LINDBERG, specially concurring.

I concur in the opinion of the court that the cause must be reversed for failure to prove the requisite scienter. My disagreement with the majority is its holding that the trial court erred when it instructed the jury that the State does not have to introduce expert testimony on whether or not the movies are obscene.

The holding of the majority adopts the defendant's argument that the instruction in question should not have been given because it incorrectly interprets prior case law, creates an impression to the jury of the lower prosecutorial burden of proof, unfairly lessens the credibility of the evidence given by the defendant's witnesses, and increases the likelihood that jurors will substitute their own personal judgments or biases in place of the proper Statewide standard.

I cannot agree with any of the reasons put forth by the majority for its holding. The instruction embodies a correct statement of the law as derived from the holding of our supreme court in *People v. Ridens*

(1972), 51 Ill. 2d 410, that the offending publications themselves are sufficient evidence of their obscenity. The majority in our case attempts to distinguish *Ridens* and the cases following its rationale upon the fact that in those cases the defendants offered no expert testimony. This distinction is not accurate since the rationale in *Ridens* has been followed in cases where expert testimony was presented by the defense. In *People v. Tannahill* (1976), 38 Ill. App. 3d 767, the court stated:

> "In *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 37 L. Ed. 2d 446, 93 S. Ct. 2628, decided on the same day as *Miller*, no expert evidence as to whether the materials were obscene was introduced. The court ruled, however, that the films themselves were obviously the best evidence of what they represent. Here, too, regardless of the presence of testimonial evidence, the magazines are evidence of their own obscenity and the factfinders, properly instructed as to the definition of 'obscene', concluded that the magazines were, in fact, obscene. The magazines graphically depict sexual intercourse, masturbation, fellatio, cunnilingus, group sex and other varieties of sexual activity with emphasis typically focused on the genitals. Despite expert testimony to the contrary, we cannot say that the State failed to prove beyond a reasonable doubt that the magazines are obscene." 38 Ill. App. 3d 767, 771.

The majority states that *City of Chicago v. Kimmel* (1964), 31 Ill. 2d 202, is not controlling because it predated the pronouncement of "community" as being the Statewide community. However, *People v. Better* (1975), 33 Ill. App. 3d 58, was decided after the adoption of the Statewide standard in *People v. Butler* (1971), 49 Ill. 2d 435. The *Better* court stated:

> "Concomitantly, defendants' argument that the trial court should have allowed expert testimony on the subject of contemporary community standards is without merit. The fact-finder, be it a jury or a trial judge, is best qualified to determine contemporary community standards. Expert testimony concerning contemporary community obscenity standards, while desirable, is not constitutionally mandated, and the absence of such testimony in the instant case did not prevent the trial court from determining, as factfinder, the applicable community standards." 33 Ill. App. 3d 58, 66.

Therefore, I do not agree that the holding in *Ridens* is inapplicable to the case at bar.

The defendant argued and the majority seems to accept the contention that this instruction gives the jury the impression of a lower prosecutorial burden of proof. I disagree with this conclusion for two reasons. First, the object of jury instructions is to convey to the jury the correct principles of law applicable to the evidence submitted, so that the jury may, by the application of proper legal principles, reach the correct

conclusion. (*People v. Richards* (1978), 64 Ill. App. 3d 472.) Certainly this jury instruction is a correct statement of the law as expressed by our supreme court in *Ridens*. Second, if this instruction were not given the jurors might have erroneously concluded that the State did not introduce testimony or evidence because it was against the State's position.

I do not agree that the credibility of the defense experts was diminished by the instruction. These experts stood unimpeached; neither their credentials nor their testimony was attacked.

I also think that the majority's concern is misplaced that the jurors when given such an instruction will substitute their own personal judgments in place of a Statewide standard. I am confident that a jury instructed properly on the standards for determining obscenity will reach the proper conclusion. The courts have addressed this problem in other cases and have clearly indicated that the best safeguard against unbridled jury discretion is proper jury instructions on the definition of obscenity. *People v. Will* (1975), 30 Ill. App. 3d 35; *People v. Watson* (1975), 26 Ill. App. 3d 1081.

The Supreme Court in *Smith v. United States* (1959), 431 U.S. 291, 305, 52 L. Ed. 2d 324, 338, 97 S. Ct. 1756, 1766, stated:

"[O]ur decision that contemporary community standards must be applied by juries in accordance with their own understanding of the tolerance of the average person in their community does not mean, as has been suggested, that obscenity convictions will be virtually unreviewable. We have stressed before *that juries must be instructed properly*, so that they consider the entire community and not simply their own subjective reactions, or the reactions of a sensitive or of a callous minority." (Emphasis added.)

Our supreme court in *People v. Jenkins* (1977), 69 Ill. 2d 61, said:

"In our judge-and-jury system it is the duty of the court to inform the jury as to the law. We must assume that jurors do not fall short of their constitutional functions and follow the instructions of the trial judge. This assumption is part and parcel of our system. As Mr. Justice Holmes long ago observed: 'But it must be assumed that the constitutional tribunal does its duty * * *.' *Aikens v. Wisconsin* (1904), 195 U.S. 194, 206, 49 L. Ed. 154, 160, 25 S. Ct. 3, 6." 69 Ill. 2d 61, 66.

While I question the wisdom of not requiring more of the State in an obscenity prosecution, I do not question that *Ridens* expresses the law to be followed, and I cannot set it aside under the thoughtful but erroneous rationale of the majority.