Royal S. Radin, J.
In these criminal actions each of the defendants has pleaded “ not guilty ” to charges of obscenity in violation of section 235.05 of the revised Penal Law. Before trial they have moved in contravention of a search warrant issued by the Honorable Aaron F. Goldstein, a Judge of this court, and for the suppression of approximately 300,000 books of various titles seized by the police, as evidence in these prosecutions, from a distribution warehouse located at 44-43 Purvis Street in the County of Queens where the defendants were contemporaneously arrested.
Upon the hearing of this motion, the need for the production of the physical evidence and oral testimony was obviated by appropriate stipulations between the parties, so that the facts, *1081 so far as necessary to a determination herein, are not in dispute. It will he illuminating, nevertheless, to review briefly the factual and procedural background before which this motion is laid.
On October 10, 1967, a member of the New York City Police Department presented to the Honorable Herbert A. Koehler, Jr., a Judge of this court, an affidavit in which the officer related that he had observed a quantity of partially burned photographic film and certain remnants of theatrical props in a garbage container outside a building at the said address and concluded that the premises were being used for the purpose of manufacturing and distributing obscene movies and stills in violation of law. Thereupon, Judge Koehler issued a search warrant for the premises on the same date, which was subsequently executed and returned in due course on an inventory form marked “ no RESULTS.”
Not thus easily discouraged, the detail of six police officers having participated in the abortive execution, respectively verified and laid before Judge Goldstein a further series of affidavits averring that in the course of executing on the first warrant, the officers had examined sample copies of numerous cartons of paperbound books bearing the lurid titles, ‘ ‘ Punishment Complex,” “ Adventures of a Puritan Cult,” “ The Itch,” “ Innocence,” “ The Demi Vierges,” “ The Way of a Man with a Maid,” “ Cosimo’s Wife,” “ A Town Bull,” and “ Play This Love with Me,” each of them, it being further alleged, “ considered as a whole (of) predominant appeal to prurient, shameful and morbid interest in nudity, sex, excretion, sadism and masochism (going) beyond the customary limits of candor * * * and * * * utterly without redeeming social value.” In support of this last-quoted restatement of statutory language, the affidavits set forth excerpts by way of selected descriptive and conversational passages which, standing alone, may be promptly conceded to be obscene by any reasonable standard. Thus, on October 30, 1967, Judge Goldstein issued a second search warrant covering the premises, designating the nine titles heretofore named and referred to in the supporting affidavits, directing the search of the Purvis Street warehouse ‘ ‘ Known as ‘ Eastern Magazine Distributors ’ and also known as ‘ Eastern Magazine News Distributors’” for property in “ violation of Article 235 of the Penal Law of the State of New York, i.e., printed matter, photographs, sketches, films and other tangible things capable of being used or adapted to arouse interest, (and) is possessed with intent to manufacture, issue, sell, give, provide, lend, mail, transfer, transmute, publish, distribute, circulate, disseminate, present, exhibit, advertise or otherwise *1082 promote or to offer or agree to do the same, all in violation of Article 235 of the Penal Law of the State of New York.”
Armed with this second warrant, the next day the police again raided the warehouse, literally cleaning it out of at least 277,000 copies of books, and seized a truck parked outside the premises bearing perhaps another 4,000 or more additional books. While the exact numbers and titles may be subject to some difference between the parties, from a reading of the sworn inventory of Patrolman Schlipf dated November 8,1967 it would appear that but 60,600 copies of the seized books were of five of the nine titles designated in the affidavits supporting the second warrant and that, in addition thereto, the seizure encompassed at least 236,500 copies of seven or more titles (defense counsel claims over 100 titles) of other books as well as miscellaneous office records, supplies and equipment nowhere named or referred to in the warrant or in the supporting affidavits.*
Defendants, through their moving papers, have levelled a multi-pronged attack upon each of the search warrants underlying the questioned seizure as well as against the sufficiency of the supporting affidavits. Arguing that the information submitted to Judge Koehler was insufficient to raise probable cause for issuance of the first warrant, the defense contends that the second warrant issued by Judge Goldstein was predicated upon information contaminated as “ fruits of the forbidden [sic] tree. ’ ’ However devastating this assault upon the first warrant, this court understands the stipulations of counsel for both sides to foreclose its consideration.
We may not as easily escape confrontation with defense counsel’s well-annotated concern over the dangers inherent in extrajudicial determinations of allegedly obscene printed matter since it is also conceded by the parties that the applicants for the second warrant failed to submit any copies of the seized works to Judge Goldstein for his judicial perusal, choosing to rely instead upon selected excerpts amounting to but a relatively few pages out of each of the suspect books. (Cf. Marcus v. Search Warrant 367 U. S. 717 [1961].)
Similarly, we may not lightly dismiss the contention that the second warrant, by omitting to specify by title or other sufficient *1083 description, the writings to be seized, and having relied solely upon a recitation of the statutory language, amounted to nothing more, in effect, than a general warrant. (People v. Rothenberg, 20 NY 2d 35 [1967].)
The District Attorney’s dependence on People v. Hendricks (45 Misc 2d 7 [1965]) may well be misplaced since Mr. Justice Shapiro, after first acknowledging the dearth of authority in support of reading the warrant so as to incorporate the contents' of the supporting affidavits, specifically took pains to limit his reading of the warrant in that ease to include averments in the affidavits “ where the search warrant specifies contraband (Emphasis added.) (Cf. People v. Rothenberg, supra, and Judge Shapiro’s dissenting opinion therein at Appellate Term.)
In deference to oft-stated maxims of judicial restraint, we may pass over the intriguing arguments of defense counsel putting in question the constitutionality of section 235.00 et seq. of the Penal Law as well as the contention that ex parte procedures may not be relied upon to justify a seizure of matter cloaked in the protection of the First Amendment to the Federal Constitution. (See A Quantity of Books v. Kansas, 378 U. S. 205 [1964]; Marcus v. Search Warrant, 367 U. S. 717, supra; United States v. Brown, 274 F. Supp. 561 [1967].)
Because this court is mindful that the questions we have thus far begged were discernible to our learned brother, Judge Gold-stein, it would appear clearly inappropriate here that such questions be entertained by another Judge in but another part of the same court, especially so since it remains for us to deal with another question raised by the movant which may well be dispositive of the motion.
Accordingly, we are thrust four-square upon the issues arising out of the manner and means whereby the second warrant was executed by the police. Here the court chooses to rest on what appears to be a clear and untenable abuse of the limited authority conferred by Judge Goldstein in the warrant issued by him. Even if it is assumed, arguendo, that the warrant were validly issued, this court cannot condone, at least with regard to such matter as plainly falls within the protective walls of our Federal and State Constitutions, any excursions by the police beyond the four corners of the warrant and affidavits in order to evade the unchallenged requirement of some judicial determination of the questioned material prior to its seizure, be it as frail as a showing of probable cause. It cannot be said with any decent respect for the undisputed facts that the vast bulk of printed matter (to say nothing of the truck, office records, supplies and equipment) seized by the police had ever been sub *1084 jected to any judicial scrutiny whatsoever before the raid which culminated in the mass seizure questioned at bar.
The evil is manifest, and a jealous defense of judicial prerogative an inescapable duty, if our constitutional safeguards are not to be treated as meaningless forms. Were we to accept as applicable to constitutionally protected written matter, the usual and albeit lawful meanderings outside the warrant so as to approve seizures of contraband incidentally encountered during an otherwise legal search as though we were here dealing with narcotics or gambling paraphernalia (see Johnson v. United States, 293 F. 2d 539; Harris v. United States, 331 U. S. 145), we need not strain to appreciate the grave risk to our valued freedoms, for ‘ ‘ The Bill of Rights was fashioned against the background of knowledge" that unrestricted power of search and seizure could also be. an instrument for stifling liberty of expression.” (Marcus v. Search Warrant, supra, p. 729; A Quantity of Books v. Kansas, 378 U. S. 205, supra; Stanford v. Texas, 379 U. S. 476 [1965].)
May we, therefore, rest content with condemning only the immediate product of official infringements upon our traditional liberties ? Or is the transgression here so obnoxious as to taint the entire mass seizure ? Surely, this court shares the reluctance of others to impair by its conclusions the successful prosecution of obscenity cases, but as Mr. Chief Justice Wabbeit observed in his dissent in Jacobellis v. Ohio (378 U. S. 184, 202 [1964]): ‘ ‘ courts are often presented with procedurally bad cases and, in dealing with them, appear to be acquiescing in the dissemination of obscenity. But if eases were well prepared and were conducted with the appropriate concern for constitutional safeguards, courts would not hesitate to enforce the laws against obscenity. Thus, enforcement agencies must realize that there is no royal road to enforcement; hard and conscientious work is required.”
The New York precedents are scarce but compelling. Though in Stengel v. Smith (18 A D 2d 458 [1963]) the Appellate Division, Fourth Department, was dealing with a proceeding seeking an injunction under section 22-a of the Code of Criminal Procedure, the situation is quite analogous. There the police had purchased some books but seized a large quantity of other publications under claim that it was incident to a lawful arrest. The court said (p. 460): “ Since violations of the Fourteenth Amendment of the Constitution of the United States and section 6 of article I of the Constitution of the State of New York infected the entire action' [tilting Marcus] we do not reach the question of obscenity of the seized material.” (See, also, People v. Kim *1085 mel, 34 Ill. 2d 578 [1966].) Similarly, in recent cases (People v. Brown and People v. Lichtmacher, April 19,1968) the Honorable William E. Ringel, a Judge of our court, sitting in New York County, held that the searches therein “ had degenerated into general searches ” and were void.
Hence, it is held in the cases at bar that the execution of the search warrant, involving as it did a massive seizure of constitutionally protected matter clearly outside the scope of the warrant, having never been afforded the benefit of judicial evaluation, degenerated into a general search which infected the entire police operation and is to be sternly condemned and deemed void in its entirety.
In this view of the cases, we need not respond to other interesting arguments so well developed by the parties, nor need we burden ourselves with the awesome task of determining whether any of the 300,000 or so books can successfully pass statutory muster.
Motion granted, except so much thereof as seeks an order dismissing the complaints herein on the grounds that article 235 of the Penal Law is unconstitutional and to the latter extent the motion is denied.

 On November 15, 1967, under authority of section 1983 of title 42 of the United States Code, a proceeding was instituted in Federal District Court for the Eastern District of New York for return of the books on the grounds that the petitioners’ civil rights had been infringed by the seizure. That proceeding was voluntarily discontinued upon consent of the District Attorney of Queens County to return all but an agreed number of copies of each title retained for use as evidence in order to prosecute the actions at bar.