**ELLWEST STEREO THEATRES, INC., a Florida Corporation, Plaintiff,**

v.

**Donald G. NICHOLS, as State Attorney for the Fourth Judicial Circuit, in and for the State of Florida, et al., Defendants.**

**No. 73–690–Civ–J–S.**

United States District Court,
M. D. Florida,
Jacksonville Division.

Oct. 22, 1975.

William J. Sheppard, Jacksonville, Fla., for plaintiff.

Robert L. Beals, Asst. Counsel, Jacksonville, Fla., for defendants.

## ORDER AND OPINION

Before SIMPSON, Circuit Judge, and SCOTT and REED, District Judges.

### PER CURIAM.

In this case, plaintiff Ellwest Stereo Theatres, Inc., challenges the constitutionality of Florida Obscenity Statutes Section 847.011,[1] alleging that utilization of this statute in civil and criminal prosecutions abridges rights secured to plaintiff by the First, Fifth and Fourteenth Amendments to the United States Constitution. Plaintiff seeks both in-

---

1. The challenged statute, Florida Statute section 847.011 (1967) reads in pertinent part as follows:

847.011 Prohibition of certain acts in connection with obscene, lewd, etc.; materials; penalty

(8)(a) The circuit court has jurisdiction to enjoin a threatened violation of this section upon complaint filed by the state attorney or attorney for a municipality in the name of the state upon the relation of such state attorney or attorney for a municipality.

(b) After the filing of such a complaint, the judge to whom it is presented may grant an order restraining the person complained of until final hearing or further order of the court. Whenever the relator state attorney or attorney for a municipality shall request a judge of said court to set a hearing upon an application for such a restraining order, such judge shall set such hearing for a time within three days after the making of such request. No such order shall be made unless such judge shall be satisfied that sufficient notice of the application therefor has been given to the party restrained of the time when and place where the application for such restraining order is to be made, provided, however, that such notice shall be dispensed with when it is manifest to such judge, from the sworn allegations of the complaint or the affidavit of the plaintiff or other competent person, that the apprehended violation will be committed if an immediate remedy is not afforded.

(c) The person sought to be enjoined shall be entitled to a trial of the issues within one day after joinder of issue and a decision shall be rendered by the court within two days of the conclusion of the trial.

(d) In the event that a final decree of injunction is entered, it shall contain a provision directing the defendant having the possession, custody, or control of the materials, matters, articles, or things affected by the injunction to surrender the same to the sheriff and requiring the sheriff to seize and destroy the same. The sheriff shall file a certificate of his compliance.

(e) In any action brought as provided in this subsection, no bond or undertaking shall be required of the state attorney or the municipality or its attorney before the issuance of a restraining order provided for by paragraph (b), and there shall be no liability on the part of the state or the state attorney or the municipality or its attorney for costs or for damages sustained by reason of such restraining order in any case where a final decree is rendered in favor of the person sought to be enjoined.

(f) Every person who has possession, custody, or control of, or otherwise deals with any of the materials, matters, articles, or things described in this section, after the service upon him of a summons and complaint in an action for injunction brought under this subsection, is chargeable with knowledge of the contents and character thereof.

junctive and declaratory relief as well as any other relief this Court may deem necessary to protect plaintiff's rights. A three-judge court was convened pursuant to 28 U.S.C. §§ 2281 and 2284. Oral argument was heard on September 27, 1974. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343 and 2201, and also 42 U.S.C. § 1983. Furthermore, this Court finds that the issues herein have not been mooted by the dismissal of the criminal prosecution against plaintiff's film projectionist Clyde Maye Brock.[2]

The facts relevant to the issues in this case, as stipulated to by the parties herein on June 28, 1974, are easily stated:

Plaintiff, Ellwest Stereo Theatres, Inc., is a Florida corporation operating a motion picture theatre in Jacksonville, Florida. Plaintiff does not promote or advertise any of its films in a sensational or salacious manner. Rather, the films are shown only to consenting adults; no one under the age of 18 is admitted.

Defendant, T. Edward Austin, is the State Attorney for the Fourth Judicial Circuit of Florida. Defendant, Dale Carson, is the Sheriff of the Consolidated City of Jacksonville and of Duval County, Florida. Both defendants are officers of the state responsible for enforcement of state statutes.

On August 28, 1973, officers of the Sheriff's Department, Duval County, Florida, appeared at the Ellwest Stereo Theatre with two warrants for the seizure of certain designated films. The warrants had been issued by a county judge on the basis of affidavits which described in detail the contents of the films and which had been submitted to the judge by officers who had actually seen the films. The warrants were issued on an *ex parte* basis; without notice to the plaintiff and without the county judge having first personally viewed the films.

On October 30, 1973, a similar sequence of events occurred. This time only one film was seized. Subsequent to this seizure, plaintiff, through its employee Clyde Maye Brock, demanded a prompt judicial determination of the obscenity of the film through an adversary hearing. Brock further requested that he be furnished a copy of the film pending the hearing. A copy was provided on November 7, 1973, approximately one week after the request. No adversary hearing, however, was ever held.[3] Furthermore, no criminal charges were ever brought against Ellwest Stereo Theatres. Criminal charges brought against Brock, the film projectionist, were dismissed January 14, 1974. This action was commenced August 29, 1973. An amended complaint was filed November 9, 1973.

Plaintiff challenges the constitutionality of Florida Statute § 847.011 on two grounds.[4] First, plaintiff alleges that the statute is unconstitutionally overbroad because it authorizes the seizure of materials alleged to be obscene but presumed to be protected without first providing for either: 1) a judicially supervised adversary proceeding to determine the obscenity of the matter prior to seizure; or 2) a judicial observation or inspection of the material with respect to obscenity. Secondly, plaintiff alleges the statute is constitutionally deficient because it fails to provide for an

2. *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

3. Plaintiff may argue that the fact that a hearing was never held indicates that the statute, as a practical matter does not function as intended. No explanation was ever offered as to why the hearing was not held.

It must be noted, however, that this action was pending on the date of the request and that the complaint herein was amended on November 9, 1973, to include the second seizure.

4. Originally plaintiff's attack was a much broader one. By stipulation, filed herein September 11, 1974, however, the issues were narrowed to two.

expedited appeal or other measure of relieving suppressed expression from trial court error. Because this Court finds neither judicial observation prior to seizure nor an expedited appeal to be constitutionally required, the constitutionality of Section 847.011 will be upheld with regard to those particulars. The reasons for this Court's opinion are set forth below:

 With regard to plaintiff's first allegation, the law is clear that any seizure of material like the allegedly obscene film in this case must be made pursuant to a warrant, issued by the proper judicial officer, after a determination by that officer that probable cause exists to believe that the seized material is offensive to the law. *Heller v. New York*, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973); *Marcus v. Search Warrants*, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961); *Cf. Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Giordenello v. United States*, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). In obscenity cases, because of the extremely sensitive nature of the First Amendment rights involved, the determination of probable cause must be made with particular care. *Marcus v. Search Warrants, supra.* As first announced in *Marcus,* and as adopted in *Heller v. New York, supra* at 488, 93 S. Ct. 2789, the question to be answered in obscenity cases is whether or not the neutral officer had a "full opportunity for independent judicial determination of probable cause prior to issuing the warrant, and that he was able to focus searchingly on the question of obscenity."

In *Heller,* the Supreme Court held that when allegedly obscene material was seized solely for the purpose of its preservation as evidence and when there was provision for a prompt judicial hearing after the seizure, then an adversary hearing prior to the seizure was not necessary for the determination of probable cause. The Court held that the magistrate's actual viewing of the films sufficed to assure the proper judicial scrutiny prior to the seizure.

 In this case, the allegedly obscene material was seized for the purpose of its preservation as evidence.[5] Also, there is provision for a prompt adversary hearing.[6] The question squarely presented to this Court then is whether an affidavit describing in detail the scenes of an allegedly obscene film which was personally viewed by the affiant—like the magistrate's personal viewing of the film in *Heller* provides sufficient basis upon which the issuing officer can make an independent determination and focus searchingly on the question of obscenity. This Court holds that it does.

In *Heller* the Supreme Court did not address the particular question posited here. The reasoning employed by the Court is, however, of guidance. The Court reasoned that in light of the fact that the restraint imposed on expression was temporary, the prior determination of probable cause based upon the viewing prevented gross abuse of First Amendment rights and the prompt hearing afterwards assured that in marginal cases those same rights would be properly safeguarded.

Relevant to section 847.011, this Court sees no substantial differences as far as safeguarding First Amendment rights is concerned between the actual viewing of the film and the reading of the detailed affidavits. The affidavit was submitted by someone who had actually viewed the film. It did not contain merely the affiants' conclusions as to the obscenity of the film. It contained a detailed factual description, scene-by-scene of what was

---

5. This finding is supported by the fact that defendants furnished plaintiff with a copy of the film upon request. *See Heller, supra* at 490, 93 S.Ct. 2789.

6. Florida Statutes section 847.011(8)(b) and (c).

portrayed. After viewing the film, such a description could not be too difficult to draw accurately. From an accurate account the officer could sufficiently visualize the contents of the film so as to focus searchingly upon the question of obscenity and determine probable cause. Furthermore, in light of the fact that the film itself was likely to be promptly reviewed in an adversary hearing, it is unlikely the affiant would intentionally mislead the issuing officer. The protection of First Amendment rights would not, therefore, be substantially increased by requiring the issuing officer to actually view the film prior to seizure.

As a further matter, as set forth in the single-judge District Court's order of September 24, 1973, denying plaintiff's request for a preliminary injunction, public interest in the full and fair prosecution of obscenity cases would be unduly hampered by requiring the magistrate to personally view the film before authorizing its seizure.[7]

■ Plaintiff's second assertion is that the Florida statute is constitutionally defective because it fails to provide for an expedited appeal. Although section 847.011(8)(b) and (c) provides for an expedited trial procedure, the statute makes no provision for expedited appellate consideration by the District Court of Appeals.[8] Plaintiff alleges that because no prompt review is specified in the statute, an unwarranted delay can and usually will occur before a final decision is made on the obscenity of particular material.[9] In the meantime, plaintiff alleges that the rights to freedom of expression are unduly suppressed. Because of the absence of provision for prompt appellate review, plaintiff concludes that section 847.011 is unconstitutional. This Court does not agree.

The source of authority for plaintiff's challenge is the Supreme Court case of *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). In *Freedman*, the Court struck down a Maryland statute for its failure to provide a procedure for prompt, final judicial decision on the obscenity of films. The statute in question in that case required that before a film could be shown to the public in Maryland it first had to be submitted to and approved by the Maryland State Board of Censors. The statute did not require the Board, however, to state its approval or disapproval of the film within any specified period of time. Thus the statute in effect permitted the Board's failure to act to become complete and perhaps final censorship of the film. In pointing out the shortcomings of the Maryland statute, the Supreme Court stated in pertinent part:

> . . . Any restraint imposed in advance of a *final* judicial determination on the merits must . . . be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution. . . . Therefore, the procedure must also assure a prompt *final* ju-

---

7. In some cases it might be impossible for the magistrate to view a film before issuing a warrant. For example, where someone knowingly transports an obscene film in interstate commerce he may be subjected to prosecution for violation of federal law. 18 U.S.C. § 1462. *United States v. Orito*, 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973). The magistrate may not be able to view such a film before the film has arrived in his state, but an agent or police officer may have viewed it and prepared a detailed affidavit outlining its contents. The Court does not believe this procedure should preclude the issuance of a warrant, based on the affidavit, to seize the film when it first enters the new jurisdiction. 9/24/73.

8. The District Court of Appeals is in most cases the state court of final jurisdiction. *Callendar v. State*, 181 So.2d 529, 532 (Fla. 1966).

9. *See, e. g., Nissinoff v. Harper*, 212 So.2d 666 (DCA 1st 1968) (District Court of Appeals decision rendered one year and three months after trial court's); *Felton v. City of Pensacola*, 200 So.2d 842 (DCA 1st 1967) (a delay of one year and four months).

862

dicial decision, to minimize the deterrent effect of an interim and erroneous denial of a license. (Emphasis added). *Freedman v. Maryland, supra* at 59, 85 S.Ct. at 739.

Plaintiff apparently interprets this language, and further use by the Supreme Court of the term "final judicial determination," to mean a determination by the appellate court. This Court thinks plaintiff takes the language too literally.

In the first place, *Freedman* dealt with a statute regulating the administration of a censorship system; not a prosecution for obscenity. As described by the Supreme Court a censorship system wherein the initial and perhaps final determination as to the protected status of expression is made by a censorship board is fraught with special dangers for First Amendment rights. The need for prompt judicial determination in an adversary proceeding or by review is much greater in those cases than in cases wherein the determination is made by a trial court after full adversary procedures. Thus the risk of harm and the need for safeguards were more severe in *Freedman* than in this case.

■ Secondly, in *Freedman*, the Court dealt primarily with the relationship between an administrative board and a lower level court: not the relationship between two courts. The Supreme Court stated:

. . . while the State may require advance submission of all films, in order to proceed effectively to bar all showings of unprotected films, the requirement cannot be administered in a manner which would lend an effect of finality to the censor's determination whether a film constitutes protected expression. The teaching of our cases is that, because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determination suffices to impose a valid final restraint. (Citations omitted.) To this end, the exhibitor must be as-

sured, by *statute or authoritative judicial construction, that the censor will, within a specified brief period, either issue a license or go to court to restrain showing the film. Any restraint imposed in advance of a final judicial determination on the merits must similarly be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution. Moreover, we are well aware that, even after expiration of a temporary restraint, an administrative refusal to license, signifying the censor's view that the film is unprotected, may have a discouraging effect on the exhibitor. See *Bantam Books, Inc., v. Sullivan,* supra [372 U. S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584]. Therefore, the procedure must also assure a prompt final judicial decision, to minimize the deterrent effect of an interim and possibly erroneous denial of a license.

While the Supreme Court repeatedly used the term "final judicial determination" this Court interprets the language to mean a determination by a trial court in an adversary context as opposed to a determination by an administrative board. We do not interpret it to mean final appellate decision. This interpretation is supported by the fact that the Court lent its tacit approval to, by suggesting as a model, a New York statute which provided for expedited trial court consideration. Further support comes from the case of *Interstate Circuit v. Dallas,* 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968) wherein at page 690, 88 S.Ct. at page 1306, footnote 22, the Court stated:

Appellants also assert that the city ordinance violates the teachings of *Freedman v. Maryland,* supra, because it does not secure prompt state appellate review. The assurance of a "prompt final judicial decision" (380 U.S. at 59 [85 S.Ct. 734]) is made here, we think, by the guaranty of a speedy determination in the trial court . . . . See *Teitel Film*

*Corp. v. Cusack,* 390 U.S. 139 [88 S. Ct. 754, 19 L.Ed.2d 966] (1968).

Plaintiff argues that while section 847.011 may provide for sufficiently expedited proceedings in civil cases, the statute is silent on criminal proceedings and must fall for this reason. This argument is not persuasive. *Freedman* itself dealt with noncriminal proceedings. Nor do we find any other authority for the proposition that criminal prosecutions for obscenity deserve expedited treatment. It would be illogical to require greater safeguards in prosecutions involving First Amendment rights than in prosecutions wherein the ultimate rights of life and liberty are involved. The rules of criminal procedure have been deemed sufficient safeguards for the rights in the latter case. They are also sufficient in the former.

As section 847.011 provides ample safeguards at the trial court level to assure proper sensitivity towards First Amendment rights this Court finds that neither the case law nor the constitution requires the statute to provide for expedited appeal. The constitutionality of the state will therefore be upheld.

In summary, neither the failure to require an issuing officer to personally view a film before authorizing its seizure nor the failure to provide for expedited appellate consideration renders Florida Statute Section 847.011 unconstitutional.

Therefore, it is

Ordered:

This case is hereby dismissed on the merits with prejudice at the cost of the plaintiff.