THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE ROBERT HOBBS *et al.*, Defendants-Appellants.

Second District    Nos. 77-50, 77-64, 77-65, 77-111 cons.

Opinion filed May 8, 1978.—Rehearing denied June 6, 1978.

Alex M. Abate, of Rockford, and J. Steven Beckett, of Reno, O'Byrne & Kepley, of Champaign, for appellants.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Robert J. Anderson, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE BOYLE delivered the opinion of the court:

The defendants, George Robert Hobbs, Shawnee L. Elmore, Michael G. Milazzo, and Jacqueline D. Davis, were convicted of obscenity in Winnebago County following jury trials, pursuant to the showing of films at two adult bookstores in Rockford, Illinois, on February 27, 1976. Each defendant was sentenced to 90 days in jail and fined $1,000 on his or her conviction.

The defendants' cases have been consolidated on appeal, and four issues are presented for review: (1) Whether the searches and seizures conducted at these two bookstores were constitutionally permissible; (2) Whether section 11—20 of the Criminal Code of 1961 (hereinafter referred to as the Illinois Obscenity Statute) (Ill. Rev. Stat. 1975, ch. 38, par. 11—20) is constitutional; (3) Whether a jury instruction which was given over the defense's objection was proper; and (4) Whether the trial court abused its discretion in sentencing the defendants. After a review of the record and briefs, we find defendants' contentions to be without merit, and we affirm the judgments of the circuit court of Winnebago County.

On appeal no significant questions are raised concerning the testimony and events at the two trials, other than the procedures surrounding the searches and seizures of the concerned films, objections to which were raised anew by pretrial, trial and post-trial motions. Accordingly, to the extent possible, only the relevant details of the pretrial motions and events, as well as the sentencing data, will be treated in this opinion.

The following facts relate to the arrests of the defendants, Hobbs, Elmore and Milazzo. On February 26, 1976, at 3 p.m., Richard Galvanoni, a Rockford police officer, entered an adult bookstore at 322 East State Street, Rockford, Illinois, to view some films in booths located in the rear premises. He obtained $3 worth of quarters from the girl behind the counter—defendant Elmore—and used these quarters to activate coin-operated movie projectors whereby he watched two films in their entirety—one being denominated "California Dreaming" and the other "Sweethearts." On February 27, 1976, at 12:30 p.m., he returned to this same bookstore, purchased various magazines, and was again waited on by defendant Elmore. Later that day, at approximately 2 p.m., Officer Galvanoni appeared before Associate Judge John W. Nielsen and executed a complaint and affidavit for a search warrant. The complaint recited the location of the store and the particular items which might constitute evidence of the offense of obscenity, specifically the two aforementioned films. Officer Galvanoni's affidavit recited his activities on February 26, 1976, and then continued as follows:

> "That the projector in booth #1 contained a film entitled 'California Dreaming', and that film contained the following sexually explicit depictions:

This movie uses three nude males as actors. One scene shows two of the males simultaneously committing fellatio upon each other. Another scene depicts one of the males inserting his penis into a second male's anus. As that happens the third male places his penis in the mouth of the male whose penis is in the third male's anus. The three men change positions within this particular sexual arrangement. Near the end of the film the camera explicitly shows all three men ejaculating together after first withdrawing their penises from the assorted orifices mentioned.

That the projector in booth #11 contained a film entitled 'Sweethearts' and that film contained the following sexually explicit depictions:

The movie begins with two clothed females unzipping the pants of and licking the penis of a prone, clothed male. The next scene shows all three participants nude and the male is simultaneously having vaginal intercourse with one girl while committing an act of cunnilingus upon the other girl. The participants change positions a number of times and one subsequent scene depicts the man having vaginal intercourse with one girl as that girl performs an act of cunnilingus upon the other female. Near the end of the film the camera shows the man ejaculating semen and then the two girls are shown licking the semen off his penis.

That neither of the two films described above had a sound track and neither had any apparent literary, artistic, political or scientific significance, * * *."

On the basis of Officer Galvanoni's complaint and affidavit, Judge Nielsen issued a search warrant which ordered that the two films, "California Dreaming" and "Sweethearts," be seized from their booths.

At approximately 2:30 p.m. on February 27, 1976, Officer Galvanoni and other Rockford officers executed the search warrant at the above premises and seized the two films specified in the warrant. In addition, the officers also seized cash, numerous business records, four film description cards, two billboards and one film, "Hot Dog," taken from the suitcase of defendant Milazzo. At this time Hobbs, Milazzo and Elmore were arrested. Hobbs and Milazzo were charged with obscenity in regard to the two films, while Elmore was similarly charged on the basis of magazines. Subsequently Elmore was charged by information with exhibiting the films. Two other persons were also arrested at this time on obscenity charges.

The following facts relate to the arrest of defendant Davis. On February 26, 1976, Officer Richard Beishir, at approximately 3:30 p.m.,

entered "The Hollywood Art Store," an adult bookstore at 615 Seventh Street, Rockford, Illinois. Officer Beishir was in the store for an hour and spent approximately $6 to view certain films, including two films in their entirety—"Rape of the Waitress" and "no known title but stars Tina Russell." Jacqueline Davis was the clerk on duty on this date and when Officer Beishir returned the next day at 12:30 p.m. to view the same films.

At approximately 2 p.m. on February 27, 1976, Officer Beishir appeared before Judge Nielsen and executed a complaint for a search warrant and supporting affidavit. This complaint for a search warrant was virtually the same as that of Officer Galvanoni, except as to the address, booth numbers and specific titles of the two films, "Rape of the Waitress" and "no known title but stars Tina Russell." Likewise, Officer Beishir's affidavit was for all practical purposes identical to that of Officer Galvanoni, except as to the time and place of his observing these films and the booth numbers. The summary of the sexually graphic depictions of each film in Officer Beishir's affidavit was equally as specific as that of Officer Galvanoni, and also, as in Officer Galvanoni's affidavit, the length of the film was not set forth.

On the basis of Officer Beishir's complaint and affidavit, Associate Judge John Nielsen issued a search warrant which ordered the seizure of the two films located in booths #8 and #7—"Rape of the Waitress" and "no known title but stars Tina Russell." Officer Beishir, with other Rockford officers, executed this warrant at 2:30 p.m. on February 27, 1976, and seized two films from booths #7 and #8—"Raped and Abused" and "Deep Throat II"—as well as the following items: five notebooks, $166.41 from the cash register, $119.75 in a green bank bag, $130 in rolled quarters, records, a projector, cash register receipts and other miscellaneous items. Defendant Davis was arrested at this time and charged by information with the exhibition of the two films seized that day in booths #7 and #8, "Deep Throat II" and "Raped and Abused." The films specified in the warrant, "Rape of the Waitress" and "no known title but stars Tina Russell," were not located by the officers during their search of the premises.

In both cases, after pretrial motions to dismiss, suppress evidence and quash the search warrants and order the return of the items seized, the trial court suppressed and ordered the return of all matters seized beyond the authority of the warrants, except for the films, "Raped and Abused" and "Deep Throat II." Judge Nielsen further denied the defendants' constitutional attack on the Illinois Obscenity Statute (Ill. Rev. Stat. 1975, ch. 38, par. 11—20) and consolidated the obscenity charges against Hobbs, Milazzo and Elmore and the two other persons arrested at the same time. After the presentation of witnesses, various motions, jury instructions, etc., the jury found Hobbs, Milazzo and Elmore guilty of

obscenity with respect to the films, "California Dreaming" and "Sweethearts." The two other defendants were acquitted. The defense submitted post-trial motions which attacked the search and seizure procedure and again questioned the validity of the Illinois Obscenity Statute and other matters. The trial court again denied these post-trial motions. A presentence report on each defendant was submitted, and following arguments of respective counsel, Hobbs, Milazzo and Elmore were sentenced to 90 days in jail and were fined $1,000 each on their convictions for obscenity.

The trial of the defendant, Davis, on the charge of obscenity with respect to the two films seized from booths #7 and #8, "Raped and Abused" and "Deep Throat II," proceeded in similar fashion. Following the presentation of witnesses, the submission of various motions and jury instructions, the jury found the defendant, Davis, guilty of obscenity as charged in the information. Defense counsel's post-trial motion on the propriety of the search and seizure and the constitutionality of the Illinois Obscenity Statute were denied by the trial court. Following the submission of a presentence report on this defendant and the arguments of counsel, defendant Davis was sentenced to 90 days in jail and fined $1,000 on her conviction for obscenity.

For purposes of appeal, the defense has presented the same arguments as to all defendants. Accordingly, unless otherwise specified, the contentions of all the defendants will be considered as a whole throughout this opinion.

Relevant to the first issue, the defendants' attack on the constitutionality of the searches and seizures is three-pronged. Defendants contend the searches and seizures were impermissible: first, that the affidavits and complaints were insufficient on their face to establish probable cause that the movies were obscene because the documents failed to specify the length of the films; second, that the seizures of business records, business equipment, money and other personal property which were not specified in the warrants thus exceeded the authority of the warrants since they operated as a *total restraint* on the operation of the two bookstores; third, that no return of the films was made to the defendants after they made the initial claim that these were the only copies of these films and thus effectuated a total suppression of defendants' business activity.

Defendants argue that the details provided by the police officers in their affidavits of the search warrants were constitutionally insufficient to give an independent judicial officer probable cause to believe that the films involved were obscene. Defendants contend that the affidavits were deficient because they did not specify the length of the films, which, the defendants conceded at oral argument, were from five to seven minutes each. The defendants aver that absent this essential time element, the

excerpted presentation of only the explicit sexual scenes in many feature movies and novels such as *Looking for Mr. Goodbar* and *Ulysses* would be obscene and justify probable cause for a judicial officer to issue a search warrant. We disagree.

■■■ Initially, we note that what is at issue here—probable cause for a judicial officer to believe that a film is obscene—is not a mathematical equation subject to various postulates and theorems. (See concurring opinion in *United States v. Tupler* (9th Cir. 1977), 564 F.2d 1294.) On the contrary, the test for probable cause is governed only by common sense and the practical considerations of every day life. (*United States v. Brinklow* (10th Cir. 1977), 560 F.2d 1003.) The trial court must weigh the totality of all the facts before it, not just a single element such as time, in order to make its determination as to whether there is a sufficient quantum of evidence to justify probable cause that a film is obscene. Herein the trial court had before it the explicit, scatological, scene-by-scene score of four films which had no sound track, were operated on continuous run, coin-operated movie projectors in booths, and which were of such a nature that the trial court determined, based on these affidavits, not that they were obscene beyond a reasonable doubt, but, after focusing searchingly, that there existed *probable cause* to believe that the films in question were obscene. This certainly was a factually sufficient basis for the judge to make his own independent determination and to "focus searchingly" on the question of obscenity before the issuance of both search warrants. (*Ellwest Stereo Theatres, Inc. v. Nichols* (M.D. Fla. 1975), 403 F. Supp. 857.) Therefore it is not an essential element of an affidavit for a search warrant that the length of the film be set forth, as long as there is a sufficient factual basis contained therein for the trial judge to focus searchingly on the question of obscenity in regard to the film.

■■ In conjunction with this argument, the defendants also aver that the trial judge must personally view the films in their entirety prior to his determination of probable cause and the issuance of the warrant for the seizure of the films. Defendants cite no authority precisely on this point, and we must respectfully disagree with their thesis. The courts which have considered the sufficiency of search warrants in obscenity cases have uniformly determined that a trial judge does not have to view the film or book to establish probable cause for the issuance of the warrant as long as the affidavit of the individual who did view the film is specific and explicit and not merely conclusionary. (See *People v. Haskin* (1976), 55 Cal. App. 3d 231, 127 Cal. Rptr. 426; *Ellwest Stereo Theatres, Inc. v. Nichols* (M.D. Fla. 1975), 403 F. Supp. 857; *Crecelius v. Commonwealth* (Ky. App. 1973), 502 S.W.2d 89.) We concur with this rational approach for evaluating probable cause in obscenity cases because such a

methodology permits an independent judicial officer to focus searchingly on the question of obscenity without having to traipse somewhere to view the films or book. The *reductio ad absurdum* of such good faith efforts by the trial court to personally view the films or books was amply demonstrated in the recent case, *People v. Bates* (1976), 39 Ill. App. 3d 259, 350 N.E.2d 44, the details of which need not be reiterated here. Accordingly, it is not necessary for the trial judge to view personally the films prior to his determination of probable cause and the issuance of a warrant for the films.

Defendants' next contention is that the officers in seizing defendants' business records and equipment, money and other personal property exceeded the authority of their specific warrants and thus effectuated a prior restraint on protected first amendment activity by closing down the two stores until the next day. Defendants concede that none of the items that were improperly seized were admitted into evidence and that these improperly obtained articles were all returned the next day. Nonetheless, defendants argue that this court should demonstrate its disapproval of the officers' disregard of the terms of the specific warrant and the resultant effect on the communication of ideas by quashing and voiding the entire searches and the films validly seized under its terms. In support of this argument defendants rely primarily on *People v. Bosco* (1968), 290 N.Y.S.2d 481, 56 Misc. 2d 1080, and *People v. Kimmel* (1966), 34 Ill. 2d 578, 217 N.E.2d 785. We believe, however, that these cases are readily distinguishable from our factual situation.

In *Bosco*, 290 N.Y.S.2d 481, 56 Misc 2d 1080, the court held that the execution of a search warrant for nine allegedly obscene books within certain premises constituted a general search and was void in its entirety where the officers seized 300,000 books, of which only 60,600 were for books designated in the affidavits. In *Kimmel*, 34 Ill. 2d 578, our supreme court held that a specific search warrant which authorized the seizure of all copies of the four books it named, without the opportunity to litigate the question of obscenity, was aimed at suppression rather than at obtaining evidence where the police seized 1,500 copies of over 130 separate books and thus was an impermissible violation of first amendment freedoms which required the suppression even of the items *named* in the search warrant.

We believe the instant case does not involve the seizure of first amendment materials of the magnitude and scope illustrated in *Bosco* and *Kimmel*. Similarly, the items illegally seized outside the scope of the warrant were not protected forms of free speech in the form of films or books, but were items generally used in the operation of a business, such as cash registers, business records, projectors, etc. In addition, all of the improperly seized objects were returned the next day to the appropriate

stores so that the inconvenience to the operation of these businesses was, in our opinion, *de minimis*. Thus, we find that the combination of these factors conclusively demonstrates that the activities of the officers in exceeding the specific scope of the search warrants did not operate as a total restraint on the first amendment rights of the two businesses.

■■ We certainly do not intend by our finding to condone the officers' actions in exceeding the scope of these search warrants which required only the seizure of specific films. In a proper case, where such actions would result in the extreme derogation of first amendment rights, this court would not hesitate to take appropriate action by suppression. However, here, the limited time period during which the businesses were closed and the nonexistent nature of the first amendment matters illegally seized lead this court to the inevitable conclusion that there was no total restraint on first amendment freedoms in this case.

The defendants next argue that the trial court erred in failing to order the return of the films seized under the warrants upon defendants' request and assertion that the defendants had only a single copy of these films at their disposal. Defendants aver that the trial court's refusal to order this return of these films constituted a prior restraint on their first amendment rights of expression to show these films. Basically, defendants' contentions are two-fold: First, that the defense, in a pretrial claim of suppression of the only copy of a film, need only make a showing that this is its only copy to permit the copying of the film; and secondly, defendants assert that if a requisite showing is proved to be called for, then the State has the burden to demonstrate that more than one copy exists. The State, in rebuttal, contends that there was not a total suppression of the films herein because the defense neither presented any evidence in support of this contention nor requested the opportunity to copy the seized films as permitted under the rationale of *Heller v. New York* (1973), 413 U.S. 483, 37 L. Ed. 2d 745, 93 S. Ct. 2789. The State also points out that the defendants did not avail themselves of statutory adversary hearings (Ill. Rev. Stat. 1975, ch. 38, par. 108—12) whereby the obscene nature of these films, if any, could have been determined after their seizure.

■■ Our determination of this question is governed by the sound principles expressed in *Heller v. New York*, 413 U.S. 483, 492-93, 37 L. Ed. 2d 745, 754, 93 S. Ct. 2789, 2795, wherein the court stated that:

> "* * * on a showing to the trial court that other copies of the film are not available to the exhibitor, the court should permit the seized film to be copied so that showing can be continued pending a judicial determination of the obscenity issue in an adversary proceeding. Otherwise, the film must be returned."

We believe the seizure of the films herein, as previously stated, was constitutionally permissible pursuant to a valid search warrant. The

defendants did not properly request an adversary proceeding on the question of the obscenity of the films as provided in section 108—12 of the Code of Criminal Procedure (Ill. Rev. Stat. 1975, ch. 38, par. 108—12), which would have permitted a prompt return of the films if they had been determined not to be obscene. Nevertheless, we believe the defendants have the burden initially to demonstrate to the trial court that other copies of the films are not available. This clearly is not an unreasonable burden and could be established by, among other methods, the testimony of the owners or defendants. Thus, the real question becomes whether the defendants have made a proper showing in this cause that other copies of these films were not available to them, which would have required the trial court to permit the films to be copied or returned under the *Heller* rationale. Our perusal of this record conclusively proves that the defendants have not properly circumstantiated the fact that these films were the only copies available to the defendants. There was no evidence brought before the trial court on this matter, and even defense counsel's own reference to this matter is equivocal and sophistical in that the most he stated was:

> "[E]ven if assuming that there were other copies of the film available and we allege that—I believe that I can state to the court, although there is no evidence we have a showing and the State has made no showing. I don't know who has burden to make the showing and the State has made no showing. *Even if we had another copy of the film,* they took the projector, too, so that not only can that film not be shown on that projector but other films— Gone With the Wind, Mickey Mouse cartoons—that the court would readily admit is not affected by obscenity statutes can't be shown either." (Emphasis added.)

These comments are not sufficient to establish that these films were the only copies available to the defendants absent more proof. Accordingly, under these circumstances, we find that the refusal of the trial court to order the return of these films was not a prior restraint on the defendants' first amendment rights of expression to show these films.

Defendants next contend that People's Instruction No. 13—a non-Illinois Pattern Jury Instruction which was offered by the State at trial to both juries—was improper and should not have been given over the defendants' objection. The contested instruction reads as follows:

> "The State is not required to produce expert testimony on the question of whether or not the films are obscene."

The defense concedes that this instruction properly states the law expressed in *People v. Ridens* (1972), 51 Ill. 2d 410, 282 N.E.2d 691, but nevertheless argues that this instruction was misleading and confusing to the juries on a matter which was not at issue. The State, in rebuttal, avers

that the defendants have waived this issue on appeal because they did not properly preserve it in their post-trial motions. Alternatively, the State contends that this instruction was properly given by the trial court to both juries and that a review of all the instructions given here demonstrates that the juries were properly instructed that the *State* had the burden of proving these defendants guilty beyond a reasonable doubt.

■■ We are in agreement with the State that the defendants have not properly preserved this issue in their post-trial motions as required by Supreme Court Rule 615(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 615(a)) and that they have accordingly waived this issue for purposes of appeal. The evidence, in our opinion, conclusively establishes the defendants' guilt beyond a reasonable doubt, and this instruction in no way deprived the defendants of a fair and impartial trial, and, hence, the defendants have waived the consideration of this contention as grounds for reversal. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) However, assuming arguendo that this issue was properly preserved in the trial court, we find no error in the trial court's properly instructing the juries that the State is not required to produce expert testimony concerning whether the films are obscene. Certainly, this is a correct statement of the law as enunciated by our supreme court in *People v. Ridens*, 51 Ill. 2d 410, and it is the trial court's duty, in our judge-and-jury system, to instruct the jury as to the proper status of the law. (*People v. Jenkins* (1977), 69 Ill. 2d 61, 370 N.E.2d 532.) Additionally, the scatologic nature of this literature in relation to other jurisdictions was an issue raised by the defendants' own pornographic "expert" and was a proper subject for a jury instruction. Accordingly, it was not error for the trial court to give this instruction to the juries.

Defendants next contend that the Illinois Obscenity Statute (Ill. Rev. Stat. 1975, ch. 38, par. 11—20) is unconstitutional because it does not meet the specific requirements of the part (b) test of *Miller v. California* (1973), 413 U.S. 15, 24, 37 L. Ed. 2d 419, 431, 93 S. Ct. 2607, 2615, *rehearing denied* (1973), 414 U.S. 881, 38 L. Ed. 2d 128, 94 S. Ct. 26, as to "whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state [obscenity] law." However, this contention is entirely devoid of merit in light of the Supreme Court's determination in *Ward v. Illinois* (1977), 431 U.S. 767, 52 L. Ed. 2d 738, 97 S. Ct. 2085, that the Illinois Obscenity Statute was not unconstitutionally overbroad because it failed to state specifically what sexual actions would be patently offensive and obscene under this statute. The court further found that the Illinois Supreme Court had specifically incorporated requirement (b) of *Miller*, 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607, as to specificity, as well as having adopted the *Miller* explanatory examples of what constitutes patently offensive descriptions or

representations of ultimate explicit sexual acts, which need not be repeated here. In accordance with these views and standards expressed in *Ward*, we similarly hold that the Illinois Obscenity Statute (Ill. Rev. Stat. 1975, ch. 38, par. 11—20) is constitutional and we reject defendants' contentions to the contrary.

Finally, the defense contends that the trial court abused its discretion in sentencing each of the defendants to 90 days and fining each of them $1,000 in light of their exemplary records. Additionally, the defendants point to various colloquies between the trial court and the prosecutor during which both parties expressed a desire to impose a sentence and fine which would be a deterrent to others who might consider working in such establishments as further grounds that the trial court abused its discretion. The State asserts in rebuttal that these sentences and fines were statutorily mandated because to grant probation for these types of offenses "would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice." Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—1(a)(3).

■■ Our supreme court recently reiterated the long-standing principle that the trial court's exercise of judicial discretion in imposing sentence will not be disturbed on appeal absent an abuse of such discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) In addition, our supreme court in *People v. Waud* (1977), 69 Ill. 2d 588, 373 N.E.2d 1, held that the trial court had not acted arbitrarily in refusing to grant probation to a defendant because the sentencing court believed the imposition of probation would have deprecated the seriousness, nature and extent of the crimes. In *Waud*, 69 Ill. 2d 588, 595-96, the court stated:

> "A crime need not be one of violence before it can be considered serious. The facts that a defendant has led a good life prior to his or her shortcomings and is not likely to repeat his or her failures again are factors to be considered by the trial court, but they are not conclusive factors. The State does not have a burden of producing empirical data to support the trial court's conclusion that probation will deprecate the seriousness of the offense. The court may reach such determination by examining all of the surrounding circumstances and drawing the reasonable inferences therefrom."

We have examined the complete record and considered the nature of these offenses, and we have determined that the trial court did not abuse its discretion in considering the above factor, among others, in the imposition of these sentences and fines which clearly were within the statutory limitations (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—3(1)) for these defendants who were convicted of Class A misdemeanors. Ill. Rev. Stat. 1975, ch. 38, par. 11—20(d).

The judgment of the circuit court of Winnebago County is affirmed as to all the defendants.

Judgments affirmed.

SEIDENFELD, P. J., and RECHENMACHER, J., concur.