THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
CAREY FOOTE *et al.*, Defendants-Appellees.

First District (5th Division)    No. 80-2197

Opinion filed February 26, 1982.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, James S. Veldman, and Dean C. Morask, Assistant State's Attorneys, of counsel), for the People.

582

Adam Bourgeois and Michael Null, both of Chicago, for appellees.

JUSTICE MEJDA delivered the opinion of the court:

The 18 individual defendants herein were charged with obscenity for exhibiting films in violation of section 11—20(a)(3) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 11—20(a)(3)). On August 13, 1979, 37 search warrants were issued authorizing the seizure of one film at each of 37 different adult bookstores in Chicago, Illinois. The 18 defendants were arrested following the seizure of 18 of these films. On July 3, 1980, the circuit court granted defendants' pretrial motions to quash the search warrants and suppress the films seized pursuant thereto.

The State appeals contending that the court erred in finding that: (1) the complaints supporting the search warrants were insufficient to establish probable cause; (2) a prior adversary hearing was required on the issue of probable obscenity; and (3) the issuing magistrate was required to view the films prior to the issuance of the warrants.

This appeal involves the procedures surrounding the searches and seizures of the 18 subject films. A brief account of the facts relating to the issuance of the instant search warrants follows. On August 10 and 13, 1979, Chicago police officers, working undercover, entered 37 adult bookstores in the city of Chicago to view films. In each instance an officer obtained quarters from a clerk and entered a booth containing a coin-operated movie projector. Using the quarters to activate the projector, each officer viewed a movie. Then, at 5:20 p.m. on August 13, the officers appeared ensemble before the Hon. James M. Schreier and presented verified complaints requesting search warrants. Each complaint recited the location of the store and the particular items which might constitute evidence of obscenity, specifically one film located in a specified booth in each store. The complaints also each contained a narrative description of the officer's observations. The following affidavit of Officer James Dillon describes the film entitled "Photographer John Holmes" and is representative of those presented:

> "On 10 Aug. 79 at approx. 12:45 hrs. p.m. I officer James Dillon went to the above described location. I purchased 8 quarters from a male white * * * I then entered booth No. 1 and deposited a quarter * * * With that a movie began to run. Approx. each 2 min. the movie would cease to run and it became necessary to insert another quarter for the purpose of continuing the movie. The movie depicts the male performing cunnilingus upon the female, they then have sexual intercourse with the male on top, and then with the female on top, doggie style, and then with both actors laying side by side performing sexual intercourse. The male inserts his finger in the female's anus while she sits on his penis and he is

laying on the floor. There is soft music in the background. The female moans during the movie and says (fuck me fuck my brains out). The male ejaculates in the female's mouth and she licks his penis clean of all semen * * * The above described film had no apprent [sic] literary, scientific or artistic value, nor any political significance."

On the basis of these complaints, Judge James M. Schreier issued warrants for the seizure of the described films at between 5:20 p.m. and 7:20 p.m. on August 13, 1979. On August 14, 1979, simultaneous searches were conducted at the 37 stores and the films in question were seized. The 18 instant defendants were arrested in connection with exhibition of 18 of these films.

On July 3, 1980, the trial court granted the defendants' pretrial motions to quash the search warrants and suppress the 18 films from evidence. In so ordering the court found the complaints to contain an "overwhelming number of legal conclusions" regarding the lack of literary, artistic, political, scientific or educational value of the films. The court also stated that the police officers did not demonstrate that they had any expertise in determining whether a film is devoid of literary, artistic, scientific or political value. Further, the court cited *Heller v. New York* (1973), 413 U.S. 483, 37 L. Ed. 2d 745, 93 S. Ct. 2789, for the proposition that the issuing magistrate was required to view the films before warrants could issue and that an adversary hearing was necessary prior to the seizure of the films.

OPINION

■■ The State initially argues that the affidavits supporting the complaints were sufficient to provide probable cause to believe that the films described were obscene. It is firmly established that the warrant must stand or fall solely on the contents of the affidavit if it is the only matter presented to the court. (*United States v. Sherwin* (9th Cir. 1977), 572 F.2d 196.) The question before the magistrate is whether the affidavits establish probable cause to believe that a violation of the obscenity laws has occurred. (*United States v. Middleton* (5th Cir. 1979), 599 F.2d 1349.) The instant affidavits used to obtain the search warrants contained more than the conclusory allegations of obscenity. As evidenced by the above representative affidavit, they stated detailed scene-by-scene descriptions of the explicit sexual activity seen in the films. The descriptions in the officers' affidavits certainly provided a factually sufficient basis for the judge to make his own determination of probable cause. Therefore, the fact that the affidavits contained the officers' conclusions regarding the literary, artistic, political, scientific or educational value does not render the affidavits insufficient as long as there is a sufficient factual basis contained

therein for the trial judge to focus searchingly on the question of obscenity in regard to the film. See *People v. Hobbs* (1978), 59 Ill. App. 3d 793, 375 N.E.2d 1367.

The State next argues that the court erred in quashing the warrants and suppressing the films on the ground that no adversary hearing was conducted prior to the seizure of the films. Defendants argue that the 37 seizures in this case constituted a single massive seizure and urge that under *Marcus v. Search Warrant* (1961), 367 U.S. 717, 6 L. Ed. 2d 1127, 81 S. Ct. 1708, and *A Quantity of Copies of Books v. Kansas* (1964), 378 U.S. 205, 12 L. Ed. 2d 809, 84 S. Ct. 1723, a prior adversary hearing was constitutionally required.

■■ The defendants' reliance on these decisions is misplaced. Initially, we do not agree that the instant seizures constituted a single massive action for purposes relevant to determining probable cause for obscenity. Only one copy of each film was seized from each of the 18 bookstores searched. (Compare *Marcus*, which involved seizure by police officers acting pursuant to a general warrant of 11,000 copies of 280 publications; 367 U.S. 717, 723, 6 L. Ed. 2d 1127, 1131, 81 S. Ct. 1708, 1711.) Moreover, as noted by the United States Supreme Court in *Heller v. New York* (1973), 413 U.S. 483, 37 L. Ed. 2d 745, 93 S. Ct. 2789, *Marcus* and *A Quantity of Copies of Books* were cases concerning the seizures of large quantities of books for the sole purpose of *destruction*. Under such circumstances it was held that a prior judicial adversary proceeding was required. In contrast, the *Heller* decision observed that the seizure of films for destruction or to block their distribution or exhibition is a very different matter from seizing a single copy of a film for the *bona fide* purpose of preserving it as evidence in a criminal proceeding; in the latter case, there is no absolute right to a prior adversary hearing.

In *Heller*, the Supreme Court set forth the following rule which leads us to the conclusion that no prior adversary hearing was required in the instant case. The court stated:

> "If such a seizure is pursuant to a warrant, issued after a determination of probable cause by a neutral magistrate, and, following the seizure, a prompt judicial determination of the obscenity issue in an adversary proceeding is available at the request of any interested party, the seizure is constitutionally permissible." 413 U.S. 483, 492, 37 L. Ed. 2d 745, 754, 93 S. Ct. 2789, 2795.

In the instant case the films were not seized for the purpose of preventing continued exhibition, but were instead seized as evidence in *bona fide* obscenity prosecutions and defendants were entitled upon request to a prompt hearing regarding the obscene nature of the films seized. (Ill. Rev. Stat. 1979, ch. 38, par. 108—12.) Accordingly, the right to a prior adversary hearing is not applicable to the seizure of the films in this case.

■■ Turning to the question of whether the judge was required to view the instant films prior to the issuance of the search warrants, we refer to the appellate court opinion in *People v. Hobbs* (1978), 59 Ill. App. 3d 793, 375 N.E.2d 1367. This case rejected the defendant's argument that the judge must personally view similar coin-operated films prior to his determination of probable cause for the issuance of a warrant as long as the affidavit of the person who did view the film is specific and explicit and not merely conclusory. We adopt and concur in the reasoning in *Hobbs*. Given the nature of the films seized in this case, generally 12 to 18 minute continuous-run coin-operated films containing little or no dialogue or sound track, and the specific and explicit contents of the supporting affidavits, it was not necessary for the judge to personally view the films prior to his determination of probable cause and the issuance of the warrants.

■ We note that the trial court distinguished and rejected the *Hobbs* case as a "second district appellate court case from Rockford * * * not a first district case, Cook County case." In Illinois, the opinions of any district of the appellate court are binding on all of the State's circuit courts. (*People v. Spahr* (1978), 56 Ill. App. 3d 434, 371 N.E.2d 1261; *People v. Hurlbert* (1976), 41 Ill. App. 3d 300, 354 N.E.2d 652; see generally 14 Ill. L. & Prac. *Courts* §83 (1968).) The trial court was not at liberty to discard the *Hobbs* decision in this case.

■■ Finally, we have considered the defendants' argument that due to the elapsed time during which the instant warrants were issued, the judge could not have focused searchingly into the probable obscenity of the films. We do not believe this contention can be sustained. The subject matter of the instant films was such that a concise, one-paragraph, scatological, scene-by-scene description provided sufficient information to establish probable cause. We doubt that to focus searchingly upon the matters before the court would have required more time than was utilized in this case. We have examined the complete record and considered the nature of the offenses and have concluded that the procedures used to issue the warrants and seize the films in this case did not lack adequate constitutional safeguards.

For the reasons stated, we reverse the order quashing the search warrants and suppressing the films seized, and remand the cause for further proceedings.

Reversed and remanded.

SULLIVAN, P. J., and LORENZ, J., concur.