**STATE v. JAYNE.**

No. MM79-1675A1-XX.

County Court, Polk County.

November 1, 1979.

Kelley W. Collier, Assistant State Attorney, for the state.

John C. Wilkins, III, Bartow, for the defendant.

DENNIS P. MALONEY, County Court Judge.

A hearing on the defendant's motion to suppress was held October 23, 1979 in chambers at Bartow. The state of Florida was represented by Kelley W. Collier, Assistant State Attorney, and the defendant was represented by John C. Wilkins III, Esq.

According to the stipulated facts, an agent of the Polk County Sheriff's Office viewed certain films at the Varsity Theater and decided that they were obscene. The agent drafted an affidavit in support of an application for a search warrant and presented it to a judge. The judge did not ask, nor was he requested, to personally view the films. He read the affidavit, asked no questions of the agent, and signed the search warrant. Later the agent executed the warrant, seized four films, and arrested the projectionist. The sole issue to be resolved here is whether the judge correctly concluded, from the facts contained in the affidavit, that probable cause existed to believe the films were legally obscene.

The applicable law is easy to state but elusively difficult to apply. A search warrant to seize allegedly obscene films may issue upon the basis of an affidavit; the judge need not personally view the films. *Ellwest Stereo Theatre, Inc. v. Nichols*, 403 F. Supp. 857, (M.D., Fla. 1975). But if the warrant issues based upon nothing but an affidavit, the affidavit must contain sufficient facts to allow the judge to "visualize the contents of the film so as to focus searchingly upon the question of obscenity and determine probable cause . . ." *Heller v. New York*, 413 U. S. 483 (1973). In making his decision the judge must consider (a) whether the average person, applying contemporary community standards, would find the work, taken as a whole, appealed to the prurient interest, (b) whether the work depicted or described, in a patently offensive way, sexual contact specifically defined by the applicable state law, as written or authoritatively construed, and (c) whether the work taken as a whole, lacked serious literary, artistic, political, or scientific value, Miller v. California, 413 U. S. 15 (1973).

Two of the four seized films, previews of "Teenage Deviate" and "Seduction" are not even mentioned in the section of the affidavit purporting to show probable cause to believe that they are obscene. Thus, they were seized without prior judicial determination of obscenity. Their seizure violated the First and Fourth Amendments to the United States Constitution. *Roaden v. Kentucky*, 413 U. S. 496 (1973).

The other two films, "Come With Me My Love" and "Feelings," are each approximately seventy-five minutes in duration. With reference to the former, the affidavit contains the following information —

"COME WITH ME MY LOVE was viewed by this agent. This film depicted coitus between man and woman, with full view insertion of male penis into female vagina. Scenes of fellatio were also depicted showing close ups of insertion. Scenes of cunnilingus were shown with close up views of the tongue in the vagina. In addi-

tion to scenes of cunnilingus, not only were there scenes of male on female, but female on female I.E. scenes of Lesbianism."

The issue is whether, *from that paragraph*, the judge could visualize the contents of the entire film with sufficient clarity to allow him to make an informed, impartial judgment that the film, taken as a whole, did or did not appeal to the prurient interest, depict sexual activity in a patently offensive way, and lack serious literary, artistic, political, or scientific value. In obscenity cases, because of the extremely sensitive nature of the First Amendment rights involved, the determination of probable cause must be made with particular care. *Roaden*, supra. The quantum of evidence needed to establish probable cause in First Amendment cases is higher than in other cases. *Roaden*, supra; *Lee Art Theater v. Virginia*, 392 U. S. 636 (1968); See *Coolidge v. New Hampshire*, 403 U. S. 443 (1971).

The better practice would be for the judge to personally view the films in their entirety. But if the affidavits must be used, they must contain a detailed, factual description, scene-by-scene of the contents of the film. *Ellwest*, supra. The affidavits must afford the neutral officer a full opportunity for independent judicial determination of probable cause. *Heller*, supra; *Marcus v. Search Warrants*, 367 U. S. 717 (1961). I believe that the above-quoted portion of the affidavit is insufficiently detailed to allow a judge to determine that a seventy minute film, which he has not seen, violates the criminal statutes.

The portion of the affidavit described the second film, "Feelings," reads as follows —

"Title unknown, this film was viewed by this agent, however, no title was ever displayed on this particular film. The plot of this film depicted a cocaine dealer who in his dealings had became indebted to his drug suppliers. To resolve his predicament he convinced his girlfriend to enter a life of prostitution. At the end of the film the girlfriend was killed during a sexual engagement, and the boyfriend was ultimately murdered by his drug connections.

This film depicted coitus between man and woman, with close up scenes, with full view of insertion of male penis into female vagina. Scenes of fellatio were also depicted, showing close ups of insertion. Close up scenes of cunnilingus were shown with views of the tongue in the vagina. Also shown were scenes of cunnilingus, involving male on female and female on female."

It is apparent that only one of the two paragraphs even suggests the possibility of obscenity. The other concerns the plot. The paragraph describing sexual activity is clearly insufficient to meet the standards prescribed by law. It is not a detailed, factual description of the contents of the film. Further, the larger of the two paragraphs, describing the plot of the film, must raise in the mind of a neutral magistrate the question of whether the film violates the *Miller* standard. Surely, that paragraph at least suggests that the film has serious social or literary value. It should have been viewed before probable cause was determined. The affidavit, viewed alone, falls so short of the constitutional requirements for the issuance of a search warrant in a First Amendment case that the motion to suppress must be granted.

Parenthetically, I observed that no decision has been made here on the question of whether the films are legally obscene. I certainly intend to venture no opinion on the distinctly different question of whether they are morally obscene. In fact, I have not seen the films. I am simply holding that where the police elect to impose criminal sanctions for the showing to paying, adult customers, of allegedly obscene films — as opposed to non-criminal, selective, injunctive nuisance proceedings — they must do so within the parameters of the constitution of the United States of America.